(No. 14817.—Reversed and remanded.)

THE WELLS BROS. CONSTRUCTION COMPANY, Plaintiff in
Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JAMES
LYDON, Defendant in Error.)

*Opinion filed December 19, 1922—Rehearing denied Feb. 8, 1923.*

WORKMEN'S COMPENSATION—*when testimony of physician who
examined applicant for purpose of testifying is incompetent.* The
testimony of a physician who has examined the applicant for com-
pensation with a view to testifying is incompetent where it is based
wholly upon the physician's observation of outward manifestations
within the applicant's control, or where the physician's statement is
based partly upon his own observation and partly upon a statement
of the case made by the injured person.

WRIT OF ERROR to the Circuit Court of Cook county;
the Hon. FRANK JOHNSTON, JR., Judge, presiding.

J. C. M. CLOW, for plaintiff in error.

JOSEPH A. WEBER, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

James Lydon, an applicant for compensation under the
Workmen's Compensation act, was on December 29, 1919,
in the employ of plaintiff in error, and on that date received
an injury which arose out of and in the course of his em-
ployment, by being struck on the head. Notice and demand
were given within the time required by statute, and medi-
cal, surgical and hospital services were furnished by the
employer. He had one child under sixteen, and the record
shows that his average earnings were $27 per week. The
details of the accident do not appear in the evidence. The
applicant testified that he was struck on the side of the head,
over the left ear, and we judge from the record and briefs
that he fell or was thrown by part of a cement-mixing ma-
chine, so that his head struck some timbers.

The questions in dispute are as to the period of tempo-
rary disability and permanent disability, if any. It was

agreed between the parties that the applicant might be examined by the Industrial Commission's medical director, who should make a report to the arbitrator, which could be made a part of the record without the privilege of cross-examination as to the report. This medical director, Dr. P. D. Magnuson, made a report April 2, 1920, pursuant to the stipulation, the substance of which is as follows: "This man [James Lydon] claims to have had a skull fracture as the result of an injury on December 29, 1919. At this time there is no evidence of skull fracture and no symptoms of any results of such fracture. He complains of a numb feeling in the back of his head and a pain in the back of his neck when he looks up. All the motions of his neck are normal and he has no signs of any interference with equilibrium. I can see no permanent disability in this case and believe that this man is able to return to work at this time."

The applicant testified that he had not worked since December 29 up to the time of the hearing, stating that he was not able to do so; that his neck bothered him and that he had a pain in his head all the time; that he had shoveled some coal back and forth at one time at his home just to test whether he could stand work or not, and found that after shoveling an hour he had to quit, as he started to get dizzy; that there was a particular spot on his head which, when pressed, caused pain, and if not pressed it only hurt once in a while. He also stated that where he received the blow, pain came when it was pressed or touched.

Dr. Carl G. Rydin, a specialist in neurology and orthopedic surgery, testified on behalf of the applicant that he had examined him, and that the applicant related to him facts of the accident and the conditions of which he complained, as to the pains in the back of the head and neck, nervousness, dizziness, noises in his ears, soreness in the head, weakness in the legs, and that he stumbled at times in walking. The doctor testified that his examination disclosed scars on the left side of the head, slight curvature of

the spine and tenderness of the orbital region; that there was a tenderness over the fourth, sixth and seventh cervical vertebræ; that there was limited motion to the neck; that upon bending the head backward the patient falls, with a painful shock to the body, and bending the body forward causes dizziness; that the grip of his hand is impaired; that there were sensory disturbances,—tickling and crawling sensations. Many of the doctor's answers were objected to on the ground that he determined the facts about which he was testifying from subjective rather than objective symptoms.

Dr. Urban C. Comes testified on behalf of the applicant to finding some scars upon the left side of the head, with tenderness in the region of the sixth and seventh vertebræ; that X-ray pictures which he took showed a compression on the spinal cord, a loss of inter-vertebral space between the sixth and seventh vertebræ, and that on elevating the head the patient stated that it made him feel better, and the witness gave it as his opinion that there was a traumatic lesion of the cervical part of the spinal cord, due to pressure; that he thought the condition permanent, and that the patient was not in condition to do the work he did prior to the injury.

Dr. William R. Cubbins testified on the part of the plaintiff in error that he examined the applicant; that there was some stiffness of the neck when the applicant turned his head from side to side, the motion thus made being about half normal; that the doctor had gone over him completely with an assistant and checked up on his reflexes and his general contour; that the general tone of the musculature was good; that there was no wasting or atrophies of any sort; that he was unable to find any scar on the head when his hair was thick but after it was cut he saw some scars; that except the slight stiffness in the neck there was no apparent disability; that he did not seem to have any staggering or dizziness or loss of the sense of equilibrium, no spasticity of the muscles, which would indicate pressure;

that there was no pathological condition shown by the X-ray picture referred to by one of the witnesses for defendant in error, except there was a slight loss between the seventh cervical vertebra and the first dorsal; that there was a slight overlapping, and that there was no apparent compression shown or pressure on the cord or brain. Witness also testified that the applicant refused to do some things requested and he could not get much out of him as to such questions; that he simply stated he could not work.

Dr. A. J. Larkin, the assistant referred to by the previous witness, testified, largely corroborating Dr. Cubbins, stating that he had made an examination of the applicant's sensories and reflexes, from his eyes to his toes; that his sensation to light and touch were present and his sensation to pain and pressure was normal, and the only thing abnormal which he found was the apparent subjective limitation of the head backward; that after it got a little back the patient would say it hurt him.

This appears to be the substance of the testimony offered, with the exception that the applicant, on rebuttal, testified that there was a numbness on the back of his head and a kind of numb pain when he attempted to straighten up his neck, and that it bothered him while lying in bed and he would get tired.

The arbitrator found that the applicant was entitled to compensation for 12 weeks' temporary total disability at $13 a week. On the hearing before the Industrial Commission the award on this point was entered for $13 per week for 156 weeks, commencing with the day after the injury, and thereafter $12 per week for a further period of 143 weeks and $6 for one week, and that upon the expiration of the foregoing payments plaintiff in error should pay the applicant a pension of $25 a month for life. This award was confirmed by the circuit court.

We think the argument of counsel for plaintiff in error finds support in the record that considerable of the testimony of the physicians testifying for the applicant was based upon a subjective examination, and it may be said that some of the testimony of the physicians for plaintiff in error was based also on the subjective symptoms as stated to them by the applicant. This court has more than once held that the testimony of physicians is incompetent which is made after examination of the applicant with a view to testifying and is based wholly upon the physicians' observation of outward manifestations within the applicant's control, such as pressure or twitching of the hands or turning in of the toes. (*Greinke* v. *Chicago City Railway Co.* 234 Ill. 564; *Casey* v. *Chicago City Railway Co.* 237 id. 140.) This court has also held that when the physician's statement is based partly upon his own observation and partly upon the statement of the case made by the injured person such evidence is not admissible. (*Chicago Union Traction Co.* v. *Giese,* 229 Ill. 260.) Therefore it is clear that the testimony of Dr. Comes, so far as he testified it was based "only on his [Lydon's] actions and statements," was inadmissible. It seems also clear from the reading of Dr. Rydin's testimony that he based his conclusion as to the applicant's condition partly upon the statements of the subjective symptoms made to him by the applicant. What was said by this court in *Schmidt* v. *Chicago City Railway Co.* 239 Ill. 494, *International Coal Co.* v. *Industrial Com.* 293 id. 524, *McKenna* v. *Chicago City Railway Co.* 296 id. 314, and *Central Illinois Service Co.* v. *Industrial Com.* 302 id. 27, does not in any way modify the conclusions reached by this court in the decisions already cited, as to the physician not being authorized to base his conclusions as to the person's injury in part upon objective symptoms and in part upon subjective symptoms derived from the patient's statements to the physician.

After an examination of the entire record we are of the opinion that the finding of the Industrial Commission as to the permanent injury to the applicant is not sustained by proper evidence in the record. There was disagreement in the testimony of the doctors as to the patient's sense of equilibrium and what was shown in the examination of the applicant as to whether or not there was pressure upon the vertebræ. There was also a conflict in the doctors' testimony as to the limitation of motion of the applicant's head,—even by the doctors testifying on behalf of the applicant, one testifying that the limitation was when the head was pushed backward, and the other that there was rigidity when the head was turned from side to side. It is clear from the testimony of the doctors who testified for the applicant that they had him under their care solely for the purpose of examination to prepare themselves for testifying in his case, and the authorities all agree that the testimony of experts in such cases should not be based upon any subjective symptoms or the statements of the applicant as to the effect of his injury. The portions of the testimony of the physicians which pertain to physical examinations made by them and which were not based upon the patient's statements might be held competent, as would also their opinion evidently based upon their own judgment from the objective examination of the patient. We are of the opinion that the record clearly shows that the finding of the arbitrator was justified by the evidence as to the applicant's temporary disability, but the finding of the commission as to the permanent disability was against the manifest weight of the evidence. Additional evidence as to the present condition of the applicant may disclose with greater certainty whether or not he has received a permanent injury.

The judgment of the circuit court will be reversed and the cause remanded. The Industrial Commission may hear any further evidence that may be desired by either party.

*Reversed and remanded.*