(No. 16442.—Reversed and remanded.)

THE LEHIGH STONE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ANDREW BERG, Defendant in Error.)

*Opinion filed February 17, 1925.*

1. WORKMEN'S COMPENSATION—*temporary total disability must be proved.* To sustain an award for temporary total disability the burden is on the applicant to prove by the greater weight of the evidence not only that he did not work but that he was not able to work during the entire period for which the award is allowed.

2. SAME—*when opinion of physician as an expert witness is not competent—practice.* An opinion of a physician who did not treat the injured employee but examined him for the purpose of testifying as to the cause of his condition is not competent where it is developed on cross-examination that the witness' opinion was not based wholly on his examination but partly upon the history of the case, and a motion to exclude the opinion of the witness is proper at the close of the testimony, although no objection was made when the opinion was given on direct examination.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding.

W. R. HUNTER, and EVA L. MINOR, for plaintiff in error.

W. H. DYER, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendant in error was injured on August 17, 1920, while in the employ of plaintiff in error as an oiler in the latter's stone-crushing plant in Kankakee county. A belt about fifty feet in length and twelve inches in width, used on one of the crushing machines, broke, and one end, carrying a metal splicing-plate, struck defendant in error on the head. He was later found lying unconscious on the floor near one of the crushing machines. His scalp had been cut. He was taken to a hospital and given medical aid.

He remained under treatment until September 13, when he went back to work. Compensation for this time and hospital and medical services were paid. He continued working at his usual occupation of oiler until October 1, 1920, when he quit. He had on September 8, 1920, complained that he had received an injury to his back. In January, 1921, he filed an application for compensation before the Industrial Commission. On hearing the arbitrator found him wholly and permanently incapable of work. On review before the commission that finding was sustained. The circuit court of Kankakee county, on *certiorari* proceedings, set aside the decision of the commission and remanded the cause for further proceedings. On further hearing the commission on September 27, 1923, found that as a result of the injury defendant in error was temporarily totally incapacitated for work for a period of 98 weeks after the injury, and that he was permanently partially incapacitated from pursuing his customary line of employment and was entitled to compensation under paragraph (*d*) of section 8 of the Compensation act. On further review by the circuit court the finding of the commission was sustained. The cause is brought here for review, plaintiff in error contending that there is not sufficient competent evidence in the record to sustain the finding of the commission of temporary total disability for a period of 98 weeks, or to sustain the finding that defendant in error suffered permanent partial disability from the injury; that the temporary total disability extended to September 13, when defendant in error returned to work, and that compensation therefor and for hospital and medical aid had been paid.

Defendant in error did no work for wages after October 1, 1920, until in the month of July, 1922, when he mowed lawns for hire in the city of Hammond, Indiana, and on August 4 of that year he became crossing flagman for a railroad company at a wage of $85.50 per month. On hearing he testified that since October 1, 1920, he has not

been able to stoop or bend over or walk without the aid of a cane and has been unable to do any but very light work.

Plaintiff in error offered the testimony of three witnesses, Robert M. Good, W. R. Sanborn and A. L. Franklin, the first of whom testified that for two weeks he had watched the movements of defendant in error in and about his back yard; that he did so between the 7th and 20th of June, 1921, which was ten months after the injury; that he was employed to do so; that witness saw him stooping over the rows in his garden, pulling radishes,—remaining in a stooped position at one time as long as nine minutes,—walking back to the house, taking the two upper steps of the back porch with one step, stepping over a fence about two feet high, and working on a playhouse; that on June 9 he used a saw and hammer on this playhouse from 10:00 A. M. until 4:45 P. M., though the day was hot, and on the 10th he saw him work on the playhouse, sawing, nailing and fitting parts; that the next day he engaged in the same work from 5:00 o'clock in the morning until 4:50 in the evening, working through a light shower; that on the next day he hoed in the garden from 5:00 in the morning until 6:00 o'clock; that he stepped over the fence six times while working in the garden and carried a pail of water to the chickens; that on June 15 he worked on panels of a small fence; that on the 17th he chased chickens out of the yard and threw handfuls of dirt at them, turning his body around and picking up the dirt in the garden and throwing it against the fence; that on the 18th witness saw him working around his chicken-coop and garden, pulling weeds and carrying water to the chickens in a three-gallon pail, and about the same occupation on June 19; that on June 20 he saw him carrying water to the chickens, pulling radishes and hoeing the garden; that witness saw him pick up a stone and throw it at a dog, stepping over the fence back and forth three times. The playhouse was made of lath. This witness testified that during this time he did not limp

315—28

or use his cane, but that when he left the house to go downtown he walked with a limp, carried a cane and held his hand on his hip.

W. R. Sanborn testified that he is one of the officers of plaintiff in error; that during the month of June, 1921, he saw the defendant in error doing carpenter work in the rear of his yard. He was sawing on some material. The witness noticed a big difference between his actions on the street and in his back yard. On the street he used a cane and walked with a limp, but in using a saw he was in the position a carpenter would assume in sawing lumber; that he was not then carrying a cane.

A. L. Franklin, book-keeper for plaintiff in error, testified that during the month of June he saw defendant in error doing some carpenter work,—making a building of some sort in the rear of his yard; that he was bending over in doing the work, matching boards or sawing; that witness drove by the house three times, and that at all these times defendant in error was working in a stooped position, with his body bent forward from his hips, but that when he was on the street he walked slowly, with a limp and with his hand on his hip or back, and carried a cane.

The first evidence that appears in the record of the injury to defendant in error's back was when he complained on September 8, some twenty days after the injury. No one was present when he was injured and the record does not show just what occurred there. The proof that his back was injured is derived from his statement as to pain in his back and the statements of physicians, Dr. Yeates, and Dr. Longpre, an osteopath. The latter testified that upon examination of defendant in error he found what he styled a rotation of the third and fourth lumbar vertebræ; that he treated him six times, but that he did not treat him further because he was in such pain that he could not take the treatments; that he could have cured him had he continued with the treatments. Defendant in error testified to loss

of weight and pain in his back, and that it was worse at the time of the hearing than when he stopped work.

Dr. Yeates testified that there was what he termed a spicule of bone on the third lumbar vertebra which was not normal, but that he did not think it was the cause of the present condition of defendant in error; that at the time of the hearing defendant in error was suffering from neurasthenia, and that if the history given by him was true it was brought on by the injury. Dr. Greenman, for plaintiff in error, testified that the spiculum referred to was a normal projection of the vertebra. Dr. Nickerson, for plaintiff in error, testified that this projection might have been there at birth, or might have been an evidence of former injury though not of a recent one; that if there had been an injury occurring before the time of the injury to defendant in error's head there would have been intense pain and he would have complained of it.

Dr. Guertin, for plaintiff in error, testified to having examined defendant in error on October 12 and 13, 1920, and that he could detect nothing that would indicate any injury to the spine or back. Dr. Greenman also testified to having examined defendant in error and found nothing the matter with his back excepting a certain rigidity of the muscles, which he said might have been controlled by voluntary action.

On rehearing before the commission Dr. Brown testified that he had examined defendant in error; that he was unable to find any organic change in the spine or anything leading from the spine. He testified that rotation of the vertebræ is an impossibility, and from an examination of the X-ray pictures he testified that defendant in error's vertebræ were entirely normal.

This is a sufficient statement of the evidence to show that it does not support the finding of the commission that the temporary total disability of the defendant in error extended over a period of 98 weeks. Total disability, so

far as it is shown by the greater weight of the evidence in the record, extended only to September 13, 1920, when defendant in error returned to work. This court has held in so many cases as to require no citation, that the burden is upon the applicant to prove by the greater weight of the evidence the injury complained of. It is not enough for the defendant in error to show that he did not work. It must also appear that he was not able to work. *Mt. Olive and Staunton Coal Co.* v. *Industrial Com.* 301 Ill. 521.

On the first hearing before the commission Dr. Yeates testified that in his opinion the condition of the defendant in error's back was due to trauma or injury. He also stated that he based that opinion partly upon the history of the case. This rendered his opinion incompetent. Expert witnesses are not permitted to give opinions based upon subjective symptoms. He did not treat Berg but examined him for the purpose of testifying. His opinion was not based wholly on his examination, and it was therefore incompetent. *Wells Bros. Co.* v. *Industrial Com.* 306 Ill. 191; *Greinke* v. *Chicago City Railway Co.* 234 id. 564.

At the close of Dr. Yeates' testimony plaintiff in error moved to exclude it on the ground that it was incompetent for the reason here stated. The record does not show that this motion was passed upon. Defendant in error contends that plaintiff in error was not entitled to a ruling excluding this evidence because the testimony was not objected to when given. The opinion of the doctor referred to was given on direct examination. The basis of that opinion was developed on cross-examination. It was therefore proper to move the exclusion of the opinion and the commission should have excluded it. His testimony was incompetent, and we are of the opinion that the competent evidence in the record does not sustain the award of the commission for partial permanent disability.

It is admitted by plaintiff in error that through a misunderstanding as to the number and ages of defendant in

error's children the compensation paid was not sufficient to cover the period for which it was paid by one dollar per week, but as the judgment of the circuit court must be reversed and the cause remanded for the reasons given, that matter is one which may readily be corrected on further hearing.

The judgment of the circuit court is reversed and the cause remanded to that court, with directions to remand the same to the Industrial Commission for further proceedings.

*Reversed and remanded, with directions.*