378          APPELLATE COURTS OF ILLINOIS.

- Thomas v. Illinois Power & Light Corp., 247 Ill. App. 378.

## Margaret C. Thomas, Appellee, v. Illinois Power & Light Corporation, Appellant.

### Gen. No. 7,791.

1. EVIDENCE—*opinion of physician as to personal injuries.* The opinion of a physician who has not treated an injured person but has made an examination shortly before the trial for the purpose of testifying as to his opinion in regard to the injuries, when based partially upon subjective and partially upon objective symptoms, is not admissible.

2. HARMLESS AND PREJUDICIAL ERRORS—*admission in evidence of opinion of physician.* The erroneous admission in evidence of the opinion of a physician that the personal injury of the plaintiff was permanent is reversible error, where six physicians testified and he was the only one who gave an opinion that the injury was permanent, and the verdict would be excessive if his opinion was excluded.

3. DAMAGES—*when $12,000 for personal injury is excessive.* A verdict of $12,000 for injuries to a saleslady who was struck in the back by a movable seat in a collision of street cars which apparently injured her nerves, but caused her to lose comparatively little time from her work where she earned around $1,200 a year, is excessive if the expert evidence is confined to the evidence of five physicians who do not testify that the injury is permanent, and if the evidence is excluded of a sixth physician that the injury is permanent.

4. TRIAL—*improper argument of attorney.* The attorney for the plaintiff in a personal injury case should not, in his argument to the jury, attempt to have the jury put itself in the position of the plaintiff.

Appeal by defendant from the Circuit Court of Peoria county; the Hon. JOSEPH E. DAILY, Judge, presiding. Heard in this court at the April term, 1927. Reversed and remanded. Opinion filed January 28, 1928.

HUNTER, PAGE & KAVANAGH, for appellant.

TODD, MORGAN, PENDARVIS & ARBER, for appellee.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This action was instituted by Margaret C. Thomas, appellee, against the Illinois Power and Light Corporation, appellant, to recover damages for injuries alleged

to have been sustained by the appellee as a result of a collision between two of appellant's street cars. The cause was tried before the court and jury and a verdict was returned finding appellant guilty and assessing the damages of appellee in the sum of $12,000. A motion for new trial was made by the appellant, which was overruled and judgment rendered on the verdict, and this appeal followed. The declaration consists of one count and charges that appellee was a passenger on a street car of appellant and that appellant's servants improperly, negligently and carelessly operated its street cars, and that as a result of such careless, negligent and improper operation, a collision between two of appellant's street cars occurred, and that as a result of that collision appellee sustained injuries.

The record discloses that on the evening of September 26, 1924, Margaret C. Thomas, appellee, boarded one of appellant's street cars to ride to her home. Upon boarding the car appellee paid the required fare. She occupied the front seat on the right-hand side of the car, which seat was perpendicular to the side of the car and the back of the seat was movable. The street car in question proceeded in a northerly direction on its regular route until it arrived at a side track or switch located on Indiana avenue between Pennsylvania and Illinois avenues in the city of Peoria. The street car in which appellee was riding waited on the side track for a southbound car to pass it. When the southbound car had passed, the northbound car left the switch open and proceeded in a northerly direction. It proceeded a short distance and collided with a southbound street car. Both cars were lighted in the usual manner.

Appellee testified that as a result of the collision she was struck in the small of the back by the movable back of the seat on which she was sitting and that she was thrown out of the seat and on to the floor of the

car. The record further discloses that after the collision appellee walked about a block and a half to her home. At the time of the collision appellee was employed by Clarke and Company, operators of a Peoria Department store, as clerk, and she returned to her work on the day after the collision and continued at work for a period of 12 days. The record further discloses that on October 16, 1924, appellee consulted Dr. Sumner Miller, who advised her to go to St. Francis Hospital, where she remained until December 9, 1924. She then worked for Clarke and Company continuously from January 5, 1925, until March 7, 1925, at which time she resigned her position. Immediately thereafter she accepted a similar position with a woman's clothing store in Peoria, following the same line of employment and working regularly until June 6, 1925. From June 6, 1925, until November 1, 1925, appellee testified that she was not employed. On November 1, 1925, she entered the employ of Block & Kuhl Company of Peoria, a mercantile house, in the capacity of saleslady. Appellee has been so employed by Block & Kuhl Company, continuously since November 1, 1925, except for a period from December 12, 1926 to February 1, 1927, during which time said appellee was visiting at the home of her brother in Texas. She was employed by said company at the time of the trial.

The record discloses that the earning capacity of appellee as a saleslady prior to the accident was as follows: During the year 1922, she earned $1,225. During the year 1923, she earned $820.85, although she was absent from her employment from the early part of May to the latter part of September, 1923. For the period from January 1, 1924, to about October 12, 1924, she earned $1,015.62; that upon her return to work following the injury complained of she received $25 per week from the date of her return, namely January 5, 1925, to January 29, 1925, when her drawing account was reduced to $18 per week, and was con-

tinued until March 7, 1925. Her earnings from March 7, 1925, to June 6, 1925, were $345.80, and from January 11, 1926, to February 12, 1927, she earned $394.61. During the last period she was absent from her employment from December 12, 1926, to February 1, 1927.

The medical evidence as to the condition of appellee, and the cause of such condition, is conflicting. Three physicians were called on behalf of appellee, two of whom treated her and one who examined her just prior to the trial. One of the treating physicans described the condition of appellee as ordinary nerve trunk and extreme nervousness, and the other as traumatic neurosis. Dr. Levitin, a medical witness who specializes in nervous disorders and who had never treated appellee but examined her a few days before the trial for the purpose of testifying, testified that she had a partial paralysis of the left side resulting from a meningeal hemorrhage around the brain. Neither Dr. Farnum nor Dr. Miller, physicians who treated appellee and testified in her behalf, said anything about her condition being permanent. Dr. Levitin testified over appellant's objection that there was a possibility of appellee's condition being permanent. The three physicians called on behalf of appellant, all of whom examined her, testified that under the circumstances a meningeal hemorrhage could not result from an injury of the character suffered by appellee and that they did not find from their examination any condition from which a permanent ailment could result.

A number of reasons are assigned for a reversal of the judgment.

Appellant did not controvert the charge of negligence alleged in the declaration of appellee. That there is a liability there is no question because the evidence sustains the averments of the declaration in so far as the question of negligence is involved.

It is first insisted that Dr. Levitin was permitted to base his opinion of appellee's medical condition upon partially subjective and partially objective symptoms and that the opinion of a physician, who has not treated but merely examined the injured shortly before trial, which is based partially upon subjective and partially upon objective symptoms is not admissible in evidence. From an examination of the record it appears that the testimony of Dr. Levitin constitutes an important and out-standing feature in the case of appellee. There is little evidence of the permanency of the injury aside from what was testified by Dr. Levitin which would justify a verdict for so large an amount as was returned by the jury. In view of the contention of appellant and the prominence of the evidence of Dr. Levitin, it becomes important to examine his testimony. Dr. Levitin apparently made a very thorough examination of appellee from the standpoint of a neurologist by subjecting her to a great variety of tests. He testified, among other things, that he tested all cranial and spinal nerves; tested for responses and motion upon touch of heat; tested position, gait, equilibrium and special senses. The reflexes were tested by a rubber hammer; temperature was tested by very hot and very cold water; pain tested by a sharp-pointed instrument touched with cotton; tested her ability to smell and taste; tested to determine her manner of walking, whistling, twisting the mouth, raising the eyebrows; grasping and extension of fingers and strength. In making his examination of appellee he used certain instruments in addition to the use of his fingers and eyes. As a result of the tests made of appellee Dr. Levitin stated, among other things, that the muscles on the left side of the face did not follow instructions as did the muscles of the right side of the face, such as whistling, twisting the mouth or raising the eyebrows; her tongue was not handled as freely; left upper extremity showed an

inability to act as strongly as the right upper extremity; grasping, extension of fingers and strength showed one-third of right hand; wrist, elbows, turning forearm out and in, bringing the elbow to the side, pulling it away from the side; raising it to the shoulder and putting hand to the head showed all of these movements were decreased less than the right side. Left lower extremity showed all movements performed with difficulty and with less strength than the right side. Abnormal reflexes present in that the big toe goes up instead of down on the left side. Left side did not respond to heat; cold was not responded to; there was no pulling away due to extreme pain as the electrode was placed on different parts of the body; could not place the electrode on the right side until there would be an immediate cry and shrinking; different parts of the left side had no response to touch. There was difficulty in controlling the left lower extremity; she sways to the left and backward; could not control her left hand in certain tests with her eyes closed.

It will be observed that many of the tests mentioned by the witness Levitin must necessarily have relied either upon the word of appellee, the nod of her head or her manifestations of pain or lack of pain. If such was not the fact, the witness could not have determined the ability of appellee to smell, taste, raise the eyebrows, grasp or extend the fingers, move the big toe, exhibit strength or lack of strength of the fingers or indicate to the witness her ability to distinguish between hot or cold water. If the result of the various tests was not made known to the witness by expression or manifestation of the appellee, then they must have been made known by the action of various muscles the control of which was within the power of appellee. The information given to the witness by the appellee either by word of mouth, nod of head or physical manifestation was as much self-

serving as a history of the case would be given when given by her.

After the doctor had made the tests and stated the results as found by him this question was put to him: "Doctor, from this examination have you an opinion what her medical condition is at this time and what her nervous condition is?" Appellant objected to the question. The doctor answered that he had an opinion and over the objection of appellant he made the following answer: "At some time in the past a hemorrhage or rupture of the blood vessels in the lining of the brain covering that area that controls motion and sensation of the opposite side, a meningeal hemorrhage with that having nerve root involvement producing severe pain in that part of the back." The doctor was then permitted to state that the accident could have been the cause of her condition. He was then asked as to the permanency of the injury. The doctor stated that in his opinion the injury was permanent.

Notwithstanding the fact objections were made by appellant, the court permitted Dr. Levitin, the witness, to answer the above-named questions, together with others of similar character. Thereafter certain hypothetical questions were asked of the doctor by appellee in each of which questions the witness was asked to base his opinion on certain facts and suppositions together with what he had learned from his examination.

The record discloses that one or more of the physicians testified to the effect that many of the movements and manifestations obtained by Dr. Levitin in his examination were subjective and not objective. Without the testimony of such physicians it is apparent from ordinary experience that many of the responses were in fact subjective. That being true then the question arises, What is the rule? The rule is, as we understand it, that the opinion of a physician who has

not treated the injured party but has made an examination shortly before the trial for the purpose of testifying as a witness, when based partially upon subjective and partially upon objective symptoms, is not admissible. This rule is clearly announced in *Greinke v. Chicago City Ry. Co.,* 234 Ill. 564, and on page 571 the court said:

"The rule, however, is well settled that a physician, when called as a witness, who has not treated the injured party but has examined him solely as a basis upon which to found an opinion to be given in a trial to recover damages for the injury sustained by the injured party, cannot testify to the statements made by the injured party to him, or in his presence, during such examination, or base an opinion upon the statements of the injured party."

In *Greinke v. Chicago City Ry. Co., supra,* a doctor was permitted to testify over objection that there was a twitching or jerking of hands; a slight drooping of her left leg or left foot as she allowed it to hang over a chair; that the toes of the left foot turned in more than those of her right foot; that the step with the left foot was not as strong as that with the right; that he noticed a difference in the strength of her hands; that one thumb was weaker than the other. Referring to those particular tests, the court at pages 571–572 said:

"An expert witness called under such circumstances must base his opinion upon objective, and not subjective, conditions. If, therefore, it would have been improper for Dr. Cox to have inquired of the appellee as to the relative strength of her hands, or as to whether she could use her left leg as well as her right leg, or whether she could walk without dragging her left leg, and it would have been incompetent for him to have given to the jury the result of such interrogation by detailing to them her replies to said questions, (as clearly it would have been,) we think it equally

clear that he could not reach the same result by having her answer his questions by a nod of the head or by the pressure of her hands, or by asking her to sit upon a chair, or to walk, and then giving to the jury the results of his observations. * * * To permit the injured party, while undergoing an examination by an expert in his employ, by jerks and twitches, by a pressure of his hand, by turning his toes in or by dragging one of his legs when walking, to thus make evidence for himself, and then to permit his expert to go before the jury and bolster up and strengthen by his opinion the self-serving testimony thus manufactured by the injured party, would open up the door wide for the grossest fraud, which might work upon his adversary the most palpable injury.''

In *Shaughnessy v. Holt,* 236 Ill. 485, on page 488, the court in its opinion considered the admissibility of the testimony of three physicians who had testified in that cause. The court there held that the opinion obtained by the physicians was inadmissible because based upon the following test: Putting hot water in one test tube and cold water in another and touching the test tubes to different parts of the injured's body. The court in this case followed the rule laid down in *Greinke v. Chicago City Ry. Co., supra.*

In *Wells Bros. Const. Co. v. Industrial Commission,* 306 Ill. 191, the court discussed the rule involved in the instant case. On page 195, the court used the following language:

''We think the argument of counsel for plaintiff in error finds support in the record that considerable of the testimony of the physicians testifying for the applicant was based upon a subjective examination, and it may be said that some of the testimony of the physicians for plaintiff in error was based also on the subjective symptoms as stated to them by the applicant. This court has more than once held that the testimony of physicians is incompetent which is made

after examination of the applicant with a view to testifying and is based wholly upon the physicians' observation of outward manifestations within the applicant's control, such as pressure or twitching of the hands or turning in of the toes. (*Greinke v. Chicago City Railway Co.*, 234 Ill. 564; *Casey v. Chicago City Railway Co.*, 237 id. 140.) This court has also held that when the physician's statement is based partly upon his own observation and partly upon the statement of the case made by the injured person such evidence is not admissible. (*Chicago Union Traction Co. v. Giese*, 229 Ill. 260.) Therefore it is clear that the testimony of Dr. Comes, so far as he testified it was based 'only on his [Lydon's] actions and statements,' was inadmissible. It seems also clear from the reading of Dr. Rydin's testimony that he based his conclusion as to the applicant's condition partly upon the statements of the subjective symptoms made to him by the applicant. What was said by this court in *Schmidt v. Chicago City Railway Co.*, 239 Ill. 494, *International Coal Co. v. Industrial Com.* 293 id. 524, *McKenna v. Chicago City Railway Co.* 296 id. 314, and *Central Illinois Service Co. v. Industrial Com.* 302 id. 27, does not in any way modify the conclusions reached by this court in the decisions already cited, as to the physician not being authorized to base his conclusions as to the person's injury in part upon objective symptoms and in part upon subjective symptoms derived from the patient's statements to the physician.''

The rule announced in *Wells Bros. Const. Co. v. Industrial Commission, supra,* is followed in *Lehigh Stone Co. v. Industrial Commission,* 315 Ill. 431–436, and *Madison Coal Corp. v. Industrial Commission,* 320 Ill. 65.

In view of the rule as above announced, the court erred in permitting Dr. Levitin to state his opinions based upon the result of his examinations which involved both subjective and objective symptoms and

matters. The testimony of Dr. Levitin undoubtedly had much influence with the jury in arriving at a verdict and in determining the amount of damages as found by them. It was the opinion of Dr. Levitin that the injury to appellee was permanent. Dr. Levitin is the only one of the six physicians who testified that the injuries were permanent.

The verdict of the jury is excessive based on the testimony of the witnesses who testified in the case other than Dr. Levitin.

A number of other reasons are argued for a reversal of the judgment. We have examined them and do not think they constitute reversible error. We are of the opinion, however, counsel erred in his argument in attempting to have the jury put itself in the position of the appellee.

We conclude, therefore, that reversible error was committed in allowing Dr. Levitin to state his opinions based upon the result of his examinations that involved both subjective and objective symptoms.

The judgment of the circuit court of Peoria county is reversed and the cause remanded.

*Reversed and remanded.*