(No. 3602—

THOMAS CRYDER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 10, 1942.*

LOUIS BEASLEY AND JOSEPH A. TROY, JR., for claimant.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

FISHER, J.

This claim was filed April 5, 1941. It is for benefits under the Workmen's Compensation Act, claimed by claimant for temporary total disability, and for total and permanent disability and for medical bills contracted as a result of an accident. This claim is based on injuries received by claimant, alleged to have arisen out of and in the course of claimant's employment. This claim was filed for benefits under the Workmen's Compensation Act as the same is applicable to State employees.

The complaint alleges that claimant was an employee of the Division of Highways, employed as a laborer. The complaint further alleges that on the 13th day of September, 1940, while engaged in his employment, claimant was riding in an automobile owned and maintained by the State, and being driven by a fellow employee. That claimant was seated in the front seat of said automobile and, while they were traveling in a southerly direction on a highway known as Kings Highway within the corporate limits of East St. Louis, their said automobile was struck by another motor vehicle operated by Michael Sinn. That, as a result of said accident, claimant was totally and permanently disabled, and has been since the date of said accident.

Claimant alleges that compensation payments were made for temporary total disability in the sum of $260.58. That payments have been made for medical and hospital bills in the sum of $509.80. The report of the Division of Highways shows bills were paid in the sum of $590.80. That claimant has contracted additional hospital and medical bills as a result of the accident in the sum of $698.95.

Claimant alleges that respondent had notice of the accident on the date thereof. That claimant was 70 years of age and had no children under the age of 16 at the date of said accident. That no third party or corporation has any interest in this claim.

The record in this case consists of the complaint, report of the Division of Highways signed by M. K. Lingle, Engineer

of Claims, the transcript of evidence, and statement, brief and argument on behalf of claimant and respondent.

As the Division of Highways had knowledge of the accident on the date on which it occurred, and the complaint was filed on April 5, 1941, the provisions of Section 24 of the Workmen's Compensation Act have been complied with. This court, therefore, has jurisdiction of this claim. It also appears from the evidence, that claimant was injured during the course of and out of his employment, and the court so finds.

The difficulty presented by this case however, is the extent and permanency of claimant's injuries—what resulted from the accident—what resulted from a coronary thrombosis —and whether the coronary thrombosis was a result of the accident. Claimant was a man 69 years of age at the time the accident occurred and the evidence shows that for a man of his age he was in general good health and was able to perform the duties of his employment which consisted of taking care of the lawn, shrubbery, trees, cutting lawn, watering and general landscape work, including handling wheelbarrows of dirt as occasionally his duties required. He was seriously injured and, on September 25, 1940, a few days after the accident, Dr. Cannady, physician in charge, reported as follows:

"Fracture of left 6th to 10th ribs, inclusive. Internal abdominal injuries. Treatment—absolute rest; immobilization of chest; continuous suction to small bowel."

On September 30, 1940, Dr. V. P. Siegel, who also attended claimant, reported—

"Fracture of 6th to 10th ribs, inclusive, left side. Pleural effusion. Internal injuries (contusion and slight hemorrhage). Paralytic ileus. Treatment—Mueller Abbott tube; strapped ribs; intravenous therapy."

Dr. Cannady testified on September 23, 1941, in describing the physical condition of claimant at that time—

"At this time Mr. Cryder has a stiffness and loss of use of his right shoulder, his right wrist, and some impairment of use of his left wrist; has stiffness of his back; he has a great deal of difficulty in getting about; he becomes short of breath when he moves around; and I can imagine he is very weak."

In answer to a question as to what effect it would have, considering his age and the fact that he sustained fractures and broken ribs of the number and locality described, the Doctor replied—

"Well, if there are no complications from it and no displacement, it might have no effect. However, in his case, he developed a pleurisy with it at the time he was in the hospital and a chest film later showed that adhesions had formed in the region of the left diaphragm, which later developed and gave him shortness of breath."

The Doctor was also asked the following questions, and gave the answers as noted.

Q. What do you say, Doctor, as to whether he is able to do any manual labor of any kind, such as attending garden, shrubbery, trees, being the kind of work that he did prior to the date of his injury, prior to September 13, 1940?

A. It would be impossible for him to do such work.

Q. Do you know of any kind of work that Mr. Cryder can do in his present physical condition?

A. I do not.

The testimony further shows that claimant was confined to the hospital about four weeks after the injury; then was confined to his home, and his condition was gradually showing improvement until February 21, 1941, when he was again taken to the hospital because he had suffered an attack of myocardial infarct, which is a loss of function of part of the myocardium, or heart muscle, due to its loss of blood supply. This usually follows a coronary thrombosis, which is a closing off of one of the arteries of the heart muscle. He was then confined to the hospital about five weeks and stayed in bed another eight weeks after he returned home, and it was some weeks after that before he was able to walk without assistance. It also appears that on the date of the hearing, September 23, 1941, he was still in a very weakened condition and was only able to get about by walking very slowly. During the time claimant was confined to the hospital immediately after the accident, for a period of from seven to fourteen days it was necessary to feed him intravenously as they had to insert a Mueller Abbott tube down through his mouth or nose, through his stomach into the intestinal tract. It also appears from the evidence that because of the condition of claimant's shoulder, arm, wrist, fingers and back, that he is permanently incapacitated from doing any further work, part of which condition was caused by his long confinement in bed. Before the heart attack, claimant complained about the condition of his shoulder and hand, and still showed weakness. From the medical testimony, these conditions would be aggravated in a man of claimant's age by his long confinement in bed. With reference to claimant's condition when he went

back to the hospital on February 21, 1941, Dr. Cannady was asked—

Q. During that time, Doctor, do you have an opinion as to whether he was still suffering from the alleged injuries that he claims to have sustained on September 13, 1940?

A. Yes, he was complaining of shortness of breath, abdominal discomfort, increasing, continuing pain of his right wrist and increasing disability of his right shoulder.

Q. Has there ever been a time when those conditions cleared up or disappeared, Doctor, that you know of, since his injuries?

A. No, there never has been.

With reference to the coronary thrombosis, Dr. Cannady was asked—

Q. Now, Doctor, can you associate, or do you associate, the condition that he had in February, called coronary thrombosis, with the accident that he sustained and the injuries consequent from that accident that he sustained September 13, 1940?

A. I think it is impossible to state that the coronary thrombosis was or was not the—or, rather, let's put it this way—I think it is impossible to state that the accident was or was not the direct cause of the coronary thrombosis. There is no way of proving either, whether it was or was not—impossible to prove either way.

Q. Taking into consideration the fact that Mr. Cryder's previous condition of health, his ability to work, and the fact that he sustained these injuries—taking into consideration all of those facts and then the fact that some time afterwards he suffered coronary occlusion, would you say that you might associate the coronary occlusion with the injuries and the after effects following the injuries, would that be possible, Doctor?

A. I think the only way that question can be answered is to state at the time he had the attack of coronary thrombosis he had not, however recovered from the effects of his injuries and anything which might weaken him and cause a poor general condition could increase a tendency towards such an occurrence.

Q. And taking all these elements into consideration your answer would be that that might have a tendency to bring about the coronary occlusion; in saying that—that is conclusive—but it might have a tendency to do that?

A. It might have, but you can't prove it either way.

There was also the testimony of Dr. Drew Luten, which is based on the history and observation of the patient and, as Dr. Luten was not the treating physician and merely made an examination for the purpose of testifying and filing a report, it, under the circumstances cannot be taken into consideration, considering the rule laid down in the case of *National Malleable & Steel Castings Co.* vs. *Industrial Com.*, 377 Ill. 169, wherein the Supreme Court said, on page 176—

"It is competent to have experts read the x-rays films. However, in this connection it should be noted that in so far as the introduction of such matters is related to the rules of evidence, the opinion of a medical expert who has not treated the employee but has examined him for the purpose of testifying as to the cause of his physical condition, is not admissable where it is based wholly upon the physician's observations of outward manifestations within the employee's control, or where it rests partly upon the statement of the case made by the employee. *Sanitary District* vs. *Ind. Com.*, 343 Ill. 236; *Lehigh Stone Company* vs. *Ind. Com.*, 315 Ill. 431; *Wells Bros. Co.* vs. *Ind. Com.*, 306 Ill. 191."

Respondent advances the argument that—

"Liability under the Workmen's Compensation Act cannot rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence but such liability must arise out of the facts established by a preponderance of the evidence,"

and cities as authority—

*Inland Rubber Co.* vs. *Ind. Com.*, 309 Ill. 43;
*Selz-Schwab & Co.* vs. *Ind. Com.*, 362 Ill. 120;
*Berry* vs. *Ind. Com.*, 335 Ill. 374;
*Standard Oil Co.* vs. *Ind Com.*, 339 Ill. 252.

This court has also followed this law in numerous cases heretofore decided by it.

Whereas the above is true, it is also true that the Supreme Court has held in many cases, as has this court, that awards must be based in accordance with the manifest weight of the evidence. Accordingly, the whole record must be considered before it can be determined what is a reasonable and fair decision, taking all the evidence into consideration. The record shows that prior to claimant's injury he enjoyed good health and, as stated in *Weil-Kalter Mfg. Co.* vs. *Ind Com.*, 376 Ill. 48, the Supreme Court said, on page 55—

"Proof of a decedent's perfect health prior to an injury, and of a change occurring immediately afterwards and continuing until death, is competent to establish that the subsequent condition resulted from the injury."

*Macon County Coal Co.* vs. *Ind. Com.*, 374 Ill. 219;
*Plano Foundry Co.* vs. *Ind. Com.*, 356 Ill. 186;
*Consolidated Coal Co.* vs. *Ind. Com.*, 320 Ill. 171.

The Supreme Court also said, in *Heyman Distributing Co.* vs. *Ind Com.*, 376 Ill. 90, where the court in discussing the rule relative to proof of controverted facts, uses the following language on page 92—

"The facts may be established by circumstantial as well as direct evidence, and the greater or less probability, leading on the whole to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts."

It is, of course, impossible for this court to say that the coronary thrombosis was, or was not, a result of the accident, as the doctors who testified would not commit themselves in this regard. It is apparent that the history of cases of coronary thrombosis is such that it is difficult to make a positive statement as to the cause, and in this regard Dr. Cannady tried to be very fair in his conclusions. Claimant was, however, very seriously injured, and while still in a weakened condition he suffered this complication of an attack of coronary thrombosis. At the time this attack occurred, on February 21, 1941, he was complaining about his shoulder and fingers, he had only partial action in his wrist, his back bothered him, and he was complaining about tenderness in the abdominal region and, with the additional complication and confinement for a long period of time in bed, his general condition was such as to make him permanently disabled. This court is of the opinion, in view of all the evidence and the reasonable inferences arising therefrom, and so finds, that claimant is permanently disabled as a result of the accident.

There is an unpaid medical bill of One Hundred Thirty-three Dollars ($133.00) due Dr. Cannady for services rendered to claimant which should be paid by respondent.

The record also discloses that claimant obtained a judgment for Three Thousand Dollars ($3,000.00) against the driver of the other automobile involved in the collision, which judgment was paid in full, which must be taken into consideration when making this award, the respondent already having been reimbursed in the sum of Eight Hundred Fifty-one and 38/100 Dollars ($851.38) covering the item of Two Hundred Sixty and 58/100 Dollars ($260.58) paid to claimant for total temporary disability and the sum of Five Hundred Ninety and 80/100 Dollars ($590.80) for moneys expended by respondent for doctor, hospital, nurse and treatment expenses.

According to the record, the amount of wages received by claimant for the year next preceding the accident was One Thousand Ninety-eight and 50/100 Dollars ($1,098.50), or an average weekly wage of Twenty-one and 12/100 Dollars ($21.12). He had a wife, but no children under 16 years of age. He was paid compensation for temporary total disability for the period September 14, 1940 to February 20, 1941 in the total amount of Two Hundred Sixty and 58/100 Dollars ($260.58).

As claimant suffered complete disability, he is entitled to compensation as provided in Subsection (f) of Section (8), limited by paragraph (a) of Section (7). This amount would be Four Thousand Dollars ($4,000.00), increased 10% by Subsection (L) of Section (8), or Four Hundred Dollars ($400.00), making the total Four Thousand Four Hundred Dollars ($4,400.00). From this would be deducted the compensation paid of $260.58, which would reduce the amount to $4,139.42. The record shows that claimant collected a judgment of $3,000.00 from a third person whose negligence caused the accident. From this amount claimant reimbursed respondent with the sum of $590.80 for medical and hospital bills paid by the State and the sum of $260.58 claimant received for temporary total disability, or a total of $851.38, leaving the balance retained by claimant, the sum of $2,148.62. Under Section (29) of the Act, this amount must be deducted from the amount of compensation due him of $4,139.42. This would reduce the compensation due claimant to $1,990.80. The weekly compensation rate would be $10.56, increased by 10%, or $11.61. The sum of $2,148.62, being the sum retained by claimant from the judgment, must be considered as compensation already paid claimant. He has, therefore, been paid from September 14, 1940, the day after his injury, for a period of 185 weeks, or until April 1, 1944 plus 77 cents.

Claimant is entitled to recover as follows:

(a) For complete disability, the sum of $1,990.80 payable $10.84 on April 8, 1944; $11.61 on April 15, 1944 and $11.61 weekly thereafter until said sum of $1,990.80 has been paid;

(b) A pension during life annually in the sum of $352.00 payable in monthly installments, the first payment to commence one month after the present sum of $1,990.80 has been fully paid.

Award is, therefore, entered in favor of Dr. Edward W. Cannady in the sum of $133.00, payable forthwith; and an award is also entered in favor of claimant in the sum of $1,990.80 payable $10.84 on April 8, 1944, $11.61 on April 15, 1944 and $11.61 weekly thereafter until paid; and thereafter a pension during life annually in the sum of $352.00 payable in monthly installments, the first payment to commence one month after the aforesaid sum of $1,990.80 has been fully paid.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compen-

sation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided for in such Act.

ECKERT, J., dissenting:

The record in this case fails to prove that the coronary thrombosis was a result of the accident, and that the original injury totally and permanently disabled the claimant. The record fails to prove whether claimant was still temporarily totally disabled when the coronary thrombosis occurred, or whether claimant's condition had reached a partial permanent stage. The Supreme Court of Illinois, and this court, have repeatedly held that the burden of proof is upon the claimant and that the employer's liability can not rest upon imagination, speculation, or conjecture, or upon a choice between two views equally compatible with the evidence.

Claimant here has failed to sustain his burden of proof. Evidence of claimant's prior good health, under the decisions of the Supreme Court, is competent and persuasive, but it remains one element of proof. The record in this case is not sufficient to sustain an award.