(No. 3591— )

ELSIE CROSS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 15, 1944.*

*Rehearing denied May 9, 1944.*

MAX J. BECKER AND LEO SEGALL, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This complaint was filed in this court on March 4, 1941. The record was not completed until the 23rd day of December, 1943, on which date it was assigned for opinion. The record consists of the complaint, deposition of claimant and Dr. Frederick C. Test, called on her behalf, abstract of same, brief and argument on behalf of claimant, brief and argument on behalf of respondent, reply brief and argument on behalf of claimant, and departmental report of the Assistant Superintendent of Charities, W. C. Couch, of the Chicago State Hospital, Chicago, Illinois.

The complaint seeks an award under the Workmen's Compensation Act for permanent and total disability as provided in paragraph (a), Section 7, and the sum of $486.80 for medical, surgical and hospital services.

The evidence of the claimant discloses that on the 3rd day of July, 1940, while employed as an attendant at the Chicago State Hospital, a mental institution, under the supervision of the Department of Public Welfare, she was attacked by a patient who beat, struck, kicked and otherwise abused her about her back, head, shoulders and abdomen. That during the attack the patient turned the claimant over and kicked her in the face, chest and abdomen. Three attendants came and loosened the patient from the claimant.

She testified she immediately reported to the night doctor of the institution, who, after an examination, pronounced the injury as mild.

An x-ray was taken of the chest July 6, 1940, which revealed a healthy chest with no evidence of fracture or injury. On the morning of the injury claimant was directed to go to Dr. Olsman, an employee of the staff of said institution, and from there to the employees' hospital. This she failed to do. Instead she elected to select her own medical treatment, and from the date of the injury, or thereabouts, until the 30th day of November, 1942, she was examined and claims to have been treated by at least four doctors, namely, Drs. Orth, Vaughan, Mock and Lally, all of Chicago. She testified that she incurred bills for examination and treatment from the above named doctors, which were introduced in evidence as claimant's exhibits 1-12 inclusive, showing the amount she claimed to have expended to be $486.80.

The departmental report, which is prima facia evidence, states that this claimant was in the hospital between February 2, 1940, and March 16, 1940, under the care of Dr. Vaughan for a chest condition which was supposed to have been influenzial pneumonia with pleurisy; that the claimant was off duty two weeks in February, 1939, for influenza and that she was in the hospital in August, 1938, for an infection of the right axillary region.

It is noteworthy that none of the above named doctors were called to support the allegations in the complaint. However, Dr. Frederick C. Test, of Chicago, was called as a supporting witness. He testified that he made examination of this claimant on November 30, 1942, at his office. He stated that she was complaining of her left chest and the right abdomen. On examination he ob-

served that she held her head a little strained. He testified she moved her head about 75° to the right and about 60° to the left, which is about normal amount of movement. But when he tried to move it farther in either direction, particularly to the left, there was a cracking, a rubbing. He stated he could feel the tissues rubbing over each other, as though they were thickened. He described it as a fibrosis condition indicative of an earlier injury to the neck and a consequent inflammation, which when subsided left scar tissue between the muscles and tendons. He was not able to palpate anything abnormal on the left side where she complained of tenderness. But on the third and fourth ribs from the sternum to the axillary lines, he stated there was flinching and rigid muscles on the right abdomen when he palpated it. This condition was not present on the left side. He stated she told him she had her appendix removed some years earlier, and had a second operation for removal of adhesions some years later.

He testified the chief objective findings developed by this examination was fibrositis in the neck. In response to a question by the attorney for claimant, he described the word "fibrositis" as a condition of fine fibrous hair line scar tissue resulting from a previous inflammation, generally following a trauma, although it may follow an arthritic inflammation.

On cross examination he testified he was not the treating physician and had been guided by what the claimant told him in reference to an attack by a patient on the 3rd day of July, 1940. The testimony of this physician being based wholly on the history and observation of the patient, and the examination having been made thirty months after the alleged injury and the examination having been made for the sole purpose of testifying

in the case, under the law it cannot be taken into consideration considering the rule laid down in the case of *National Steel Castings Co.* vs. *Ind. Com.*, 377 Ill. 169, wherein the Supreme Court said, on page 176—

"It is competent to have experts read the x-ray films. However, in this connection it should be noted that in so far as the introduction of such matters is related to the rules of evidence, the opinion of a medical expert who has not treated the employee but has examined him for the purpose of testifying as to the cause of his physical condition, is not admissible where it is based wholly upon the physician's observations of outward manifestations within the employee's control, or where it rests partly upon the statement of the case made by the employee. *Sanitary District* vs. *Ind. Com.*, 343 Ill. 236; *Lehigh Stone Co.* vs. *Ind. Com.*, 315 Ill. 431; *Wells Bros. Co.* vs. *Ind. Com.*, 306 Ill. 191."

But taking Dr. Test's testimony as we find it, and giving it full weight, it is at best speculative.

On cross examination the following questions were propounded:

Q. Dr. Test, all you know about her injury or accident at the hospital is what she told you?
A. Is what she told me, yes.
Q. You just testified that she could move her arm seventy-five per cent one way and sixty per cent the other?
A. She can. She did.
Q. And that might be caused by trauma or it might be caused by arthritis, is that right? You would not be able to say today which that was caused by?
A. I don't think so.
Q. And you claim that her main injury is the neck injury?
A. I do, yes.
Q. Yes, and you don't know the cause of that?
A. I don't know the cause of it, no.

Liability under the Workmen's Compensation Act cannot rest upon imagination, speculation or conjecture or upon a choice between two views equally compatible with the evidence but such liability must arise out of the facts established by a preponderance of the evidence. *Inland Rubber Co.* vs. *Ind. Com.*, 309 Ill. 43; *Cryder* vs. *State*, 12 C. C. R. 291.

The burden of proof is on the claimant to show a causal connection between the injury and her alleged condition of ill-being. Her medical witness, Dr. Test, was unable to determine whether or not the claimant's alleged disability as he found it, was a result of the injury or was caused by an arthritic condition which existed prior to the injury.

In *Mandell* vs. *State*, 12 C. C. R., page 49, we said:

"It appears from the evidence that claimant has not sustained her burden of proving the causal connection between the accident and her alleged incapacity; that any liability in this case would be based not upon the facts, but upon conjecture; that there are two views equally compatible: (1) that claimant's disability is a result of the injury; (2) that claimant's disability is a result of a prior arthritic condition."

This claim for permanent and total disability must be denied. Likewise, the claim for $486.80 alleged to have been expended by claimant for medical services must be denied, the respondent having tendered the necessary first aid, medical and surgical services, necessary or required to cure or relieve her from the effects of the injury as provided under Section 8 (a) of the Act. These services were refused by the claimant and she elected to secure her own physician, surgeon and hospital services at her own expense.