68

(No. 3792— )

MAYME PECK, Claimant, *vs.* STATE OF ILLINOIS, Respondent.
*Opinion filed January 9, 1945.*

CARSON & APPLEMAN, for claimant.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

FISHER, J.

The record of this case consists of the Complaint, Original and Supplemental Reports of the Department of Public Welfare, Transcript of Evidence, Claimant's Abstract of Record, Statement, Brief and Argument of both Claimant and Respondent, and Reply Brief of Claimant.

The facts of the case, which are not in dispute, are that claimant was employed by respondent at the Manteno State Hospital on January 1, 1943, at a salary of $52.50 per month, plus maintenance valued at $24.00 per month. That on said date, while in the course of her employment, claimant slipped and fell, and as a result suffered a fracture of her left wrist. That because of

the improper healing of the fracture, claimant suffered a partial total loss of the use of her wrist and hand.

No jurisdictional questions are involved and respondent agrees that ''the whole point of contention between claimant and respondent is the amount of compensation to which claimant is entitled.''

The questions in controversy, presented for determination here, are:

A. The value of maintenance.

B. The duration of temporary total disability.

C. The degree of permanent partial disability.

We will discuss these questions in their order.

## A.

The compensation rate is determined by the salary of the employee, including maintenance; and claimant contends that the value of maintenance of $24.00 per month as fixed by respondent is much too low and thereby deprives claimant of her just rate of compensation. Claimant presents evidence purporting to show that the value of maintenance as furnished to claimant is ''between $50.00 and $75.00 per month.''

In the operation of many of its institutions, the State furnishes maintenance to its employees at a fixed and predetermined value. If the employee desires to seek maintenance elsewhere, a sum equal to the fixed value of the maintenance is added to the salary paid to such employee. In this case the basic salary was $52.50 per month, and the value of the maintenance at the institution where claimant was employed was fixed at $24.00 per month. Claimant elected to accept maintenance at the institution. In the absence of very clear and convincing

proof that the fixed value of maintenance is wholly inadequate, it has been the rule to accept such value to be reasonable, and this value is taken for the purpose of fixing the rate of compensation. The evidence here does not justify a change in this general rule. Claimant's monthly salary, for the purpose of fixing her compensation rate is, therefore, her basic salary of $52.50 per month plus maintenance allowance of $24.00 per month, or a total of $76.50 per month.

## B.

Claimant seeks temporary total disability for 64 weeks. Respondent contends that no temporary total disability compensation should be allowed for the reason that the evidence does not disclose a definite period of time that claimant was disabled.

A report of the Department of Public Welfare filed herein shows that the injury to claimant occurred on January 31, 1943, and that she was advised to report for duty on February 7, 1943. She worked from February 7th to February 10th, inclusive. On February 10th, 1943, she complained of difficulty in doing her work and requested a leave of absence. She was instructed to return in a week for further examination, but failed to do so. She was paid her salary to March 12, 1943.

Claimant testified that her arm was in a plaster cast for 7 weeks and that the cast was removed by a Doctor Beck of Oakland, Illinois. She further testified on June 1, 1944, that she was then working two days a week.

"To sustain an award for temporary total disability the burden is on the claimant to prove by the greater weight of evidence not only that she did not work but that she was not able to work during the entire period for which an award is allowed."

*Stone Company* vs. *Industrial Commission*, 315 Ill. 431.

"It is a well settled rule that the period of temporary total dis-

ability is the time of healing process during which the employee is totally incapacitated from work by reason of the ailment attending the injury."

*Peabody Coal Co.* vs. *Industrial Commission*, 308-133.

There is here no evidence whatever to show when claimant was physically able to return to her previous employment, or to do other kinds of work, or when she actually began the work she is now doing.

The claim for compensation for temporary total disability, therefore, cannot be allowed.

## C.

Claimant seeks an award for 65% loss of the use of her left arm. It is admitted that claimant suffered a fracture of her left wrist and, from the evidence, it appears that the fracture failed to heal properly and as a result claimant has sustained a permanent partial loss of the use of her wrist. Dr. C. W. Christie, who examined claimant on April 12, 1943, said claimant had a marked deformity of the left wrist and that "x-ray reveals a fracture of the end of the radius and ulna with an overriding of the fragments and, I believe, a total lack of union. I would estimate that she has about 65% to 75% disability of that wrist."

The x-ray report, made at Mercy Hospital, Urbana, Illinois, by Stephen H. Tage, M. D., Radiologist, states—

"Radiographic examination of the left wrist joint, shows a complete, transverse fracture through the radius, ¾ of an inch proximal to the wrist joint. Considerable overriding of the fragments is noted. There is also a complete fracture through the styloid process of the ulna, with some medial displacement. DIAGNOSIS: Fracture, radius and ulna—left."

Respondent contends that Dr. Christie's opinion of the x-ray report refers only to a loss of the use of the wrist and made no reference to the arm. That there was

no injury to the shoulder, or elbow, or any part of her arm, other than the wrist. Therefore, argues respondent, considering all the joints of equal importance, a 50% loss of the use of the wrist would result in only 16⅔% loss of the use of the arm. Claimant argues "of what avail is flexion of the shoulder joint if one cannot use the remainder of the arm?" Our Supreme Court, in *Payne* vs. *Industrial Commission,* 296-333, said:

"The loss of any substantial portion of a leg constitutes the loss of the leg within the meaning of the Compensation Act, and the necessary amputation of the leg 10 inches above the ankle joint will entitle the employee to compensation for loss of the leg."

It is difficult, under the evidence, to determine the degree of disability or loss of use of claimant's left arm and, therefore, upon the request of respondent the claimant was asked to appear for observation in order that this cause might be determined from an observation and examination of both the record and the claimant.

From the appearance of claimant's wrist at this time, and a consideration of all the evidence, it appears to us that a reasonable conclusion would be that claimant has been permanently injured to the extent of 30% of the loss of use of her left arm, and we so find.

(Sec. 8, par. e13) Workmen's Compensation Act provides "for the loss of an arm or the permanent and complete loss of its use 50% of the average weekly wage during 225 weeks." Claimant is, therefore, entitled to compensation for 67½ weeks. Claimant's compensation rate, based on her salary, is $8.83 per week, increased 10% (Sec. 8, par. 1), or a total of $9.71 per week.

An award is therefore entered in favor of claimant, Mayme Peck, in the sum of $655.43, all of which is accrued and is payable forthwith.

This award is subject to the approval of the Gov-

ernor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."