(No. 14432.—Reversed and remanded.)

T. C. KELLER, Receiver, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PATRICK KINNEY, Defendant in Error.)

*Opinion filed April 19, 1922.*

1. WORKMEN'S COMPENSATION—*when circuit court may review the facts.* The circuit court, reviewing a decision of the Industrial Commission after the amendment of 1921 to section 19 of the Compensation act, has power to review the facts as well as the law.

2. SAME—*weight of finding of Industrial Commission on review of facts in Supreme Court.* Where the Industrial Commission sees and hears the witnesses, the Supreme Court, on review, will give the same weight to the finding of the commission that is given to the findings of other administrative bodies, and the decision of the Industrial Commission will not be reversed on the facts unless it is against the weight of the evidence.

3. SAME—*an award cannot be sustained if disability is caused solely by pre-existing disease.* Compensation may be awarded for

an injury although there is a pre-existing disease if the disease is aggravated and accelerated by the injury, but an award cannot be sustained where the weight of the evidence shows that the disability is due solely to a pre-existing disease and would have arisen regardless of the injury.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. THOMAS M. JETT, Judge, presiding.

HILL & BULLINGTON, for plaintiff in error.

A. W. KERR, and SAM GILBERT, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

May 1, 1918, Patrick Kinney, defendant in error, was injured by a fall of coal in the mine of plaintiff in error. May 29, 1919, the arbitrator before whom the evidence was taken found that defendant in error was entitled to receive compensation for two days' temporary total disability, and that he was entitled to the further sum of $15 a week for 133⅓ weeks for the reason that the injuries sustained caused the permanent and complete loss of the sight of his right eye and the permanent loss of one-third of the sight of his left eye. On review the Industrial Commission heard further testimony of defendant in error and received a written report of an examination made by its medical director. It confirmed the decision of the arbitrator and entered an award accordingly. September 6, 1921, on review before the circuit court of Montgomery county a judgment was entered confirming this award.

Under the law in force at the time this cause was reviewed by the circuit court it had the power and it was proper for it to review the facts as well as the law. (*Otis Elevator Co.* v. *Industrial Com. ante,* p. 90; *Chicago and Western Indiana Railroad Co.* v. *Guthrie,* 192 Ill. 579.) In reviewing the facts this court will give great weight to the

finding of the Industrial Commission, which is qualified by experience and special study to weigh the facts and circumstances applicable to cases within its jurisdiction. Where the Industrial Commission sees and hears the witnesses testify we will give to its finding the same weight that we give to the finding of other administrative commissions, and will not reverse the decision of the Industrial Commission on a review of the facts unless its decision is against the manifest weight of the evidence. *Public Utilities Com.* v. *Springfield Gas Co.* 291 Ill. 209; *Public Utilities Com.* v. *Toledo, St. Louis and Western Railroad Co.* 286 id. 582.

Defendant in error testified that he was injured about nine o'clock in the morning of May 1, 1918; that the fall of coal struck him in the back and on the head and knocked him unconscious; that he reported the accident to one of the clerks in the office; that he rode home in a wagon; that he was sitting in a chair, having his leg and his head bathed, when Dr. W. C. Hovey arrived, about ten o'clock; that he was treated for several days by Dr. Hovey; that he returned to work in the mine nine days after the accident, and that he continued to work there until the mine closed down because of a fire which started in the mine and lasted for more than a month; that he returned to work as soon as the fire was extinguished and that he was still working at the time of the hearing before the Industrial Commission. On direct examination he testified that there was a cut on the back of his head about one inch long, but on cross-examination he testified that the cut was about seven inches long. He further testified that the chunk of coal which fell on him weighed about 600 pounds and that his right shoulder, right knee and left ankle were injured; that before the accident his eyes were good and that they became affected about three weeks afterwards; that in the latter part of September he began taking treatments for his eyes, and that he continued the treatments for about three months; that Dr. Charles, an eye specialist of St. Louis,

and Dr. F. F. Frey, a neurologist of St. Louis, treated him in October; that they reported their diagnosis to Dr. Hovey, who continued to treat him under their directions; that he entered a hospital in St. Louis on March 19, 1919, and remained there a month under the care of Dr. Frank J. Dietz. His right eye continued to grow weaker from September following the accident until he lost the sight of it, in January, 1919. Before the Industrial Commission defendant in error testified that his left eye was growing weaker, and that he could not see as well with it at that time as when he testified before the arbitrator; that before he was injured he could load eighteen tons of coal a day and that at the time of the hearing before the commission he could load only six tons a day.

Dr. Hovey testified that he had practiced medicine for twenty-two years; that he was called to treat defendant in error May 1, 1918; that he found him sitting in a chair; that he made an examination of his body and found his left ankle slightly sprained and found abrasions of the skin on his right hand, right knee and right shoulder; that he applied adhesive straps to the ankle and treated the abrasions; that he found no injury to the head; that he saw him the next day and again on the fourth day; that defendant in error did not apply for a discharge, but that he knew from his own knowledge that he returned to work at the mine; that he saw him again the last week in September, when he came and told him his eyes were getting bad; that he suggested to him that he go to Dr. Charles, at St. Louis; that after defendant in error had been to Dr. Charles he returned to him for treatment, which Dr. Frey had recommended in a letter; that the examination showed that defendant in error was suffering from tabes dorsalis, which is commonly called locomotor ataxia; that he gave him, under the directions of Dr. Frey, bichloride of mercury and strychnine, which is a treatment for syphilis; that the first time defendant in error said anything to him about

having received an injury on the head was in November, 1918, and that at the time he treated defendant in error he made a note of the injuries which he found but that he had no recollection whatever of any injury to the head. He examined some X-ray photographs which had been taken for defendant in error, and stated that they did not show a fracture of the skull at the point where defendant in error claimed that his head had been injured.

Dr. Dietz testified that he had been practicing medicine for twenty years; that he treated defendant in error for a month following March 20, 1919; that defendant in error told him that he was injured by a fall of coal striking him on the head and back; that he examined the back of his head and found a little scar tissue; that he had two X-ray plates taken, and that an examination of the plates showed a thickened condition of the periosteum and a fracture about four inches above the occipital protuberance; that assuming that defendant in error was struck on the back of the head May 1, 1918, with sufficient violence to cause a fracture, it would affect the optic nerve and would cause blindness within six months or a year or within two or three years; that the first time he saw defendant in error he was blind in the right eye and had lost a third or more of the sight of the left eye; that the condition could have been caused by a fracture of the back of the skull, and that an injury to the back of the head would first affect the scalp, then the periosteum, then the meninges and then the brain. On cross-examination Dr. Dietz testified that he was not a brain specialist nor an eye specialist nor a neurologist, and that he was not able to tell much about the exact location of the optic nerve except that it is seven or eight inches long and emanates from the front part of the brain and goes to the back part of the eyes. He made a blood test and found it positive.

Dr. D. F. Coffey testified that he had been practicing medicine seventeen years and that he was a specialist in the

treatment of the eyes; that he examined defendant in error at his office at Pana, Illinois, March 9, 1919; that he found the left eye to have a vision of 20/25ths, which is practically normal, and the right eye practically blind; that defendant in error told him that he had received an injury to his head, and indicated the place where he received it; that the place he indicated was a point just above the right ear; that the X-ray plates which were handed him for examination showed no evidence of a fracture; that a blow received on the back of the head at the junction of the parietal and occipital bones sufficient to cause a fracture of the bones of the skull would render the patient unconscious and cause bleeding from the ears, mouth and nose; that the patient would not be able to return to work within nine days after such an injury; that the optic nerve emanates from the brain some distance from the point where defendant in error claimed his skull had been fractured; that he examined the skull of defendant in error and found nothing to indicate that it had been fractured; that defendant in error had an Argyle-Robertson pupil, which is a pupil re-action that responds to accommodation but not to light; that he was suffering from optic nerve atrophy; that the condition of his eyes indicated that he was suffering from tabes dorsalis, and that it was his opinion that the cause of the blindness of defendant in error was syphilis.

Dr. Z. V. Kimball testified that he had been practicing medicine for sixteen years and that he was a specialist in diseases of the eye; that he had taken X-ray photographs and was familiar with reading X-ray plates; that the plates showing the head of defendant in error did not indicate a fracture of the skull; that the shadow on the plate pointed out by Dr. Dietz as indicating a fracture was the junction of the occipital and parietal bones, and that the thickening of the skull at that point was normal; that if defendant in error had received a blow on the back of the head at this point sufficient to cause a fracture he would in all proba-

bility have been killed, and that there certainly would have been a loss of consciousness, which might have lasted for two or three days, and a bleeding from the ears; that he was familiar with the effects of syphilis on the optic nerve and the sight; that it affects primarily the nerves and the central nervous system to the brain, and that the eye-trouble follows the luetic infection; that the Argyle-Robertson pupil is a paralysis of certain nerves which control the eyes and prevent their re-action to light, and that such a condition results from the luetic condition.

Dr. P. B. Magnuson, medical director of the Industrial Commission, reported that his examination revealed no evidence of injury to the back of the head of defendant in error and that he could find no scar; that the knee jerks of defendant in error were entirely absent; that he had no Babinski reflex, no plantar reflex and had a marked Rombert sign, and that he was suffering from an advanced case of locomotor ataxia. He included in his report the report of Dr. Pusey, an eye specialist, who made an examination under his direction, and this report showed that defendant in error had Argyle-Robertson pupils and that the optic nerve showed a simple non-inflammatory atrophy.

Compensation may be awarded for an injury although there is a pre-existing disease if the disease is aggravated and accelerated by such injury, (*Rockford Traction Co.* v. *Industrial Com.* 295 Ill. 358,) but an award cannot be sustained where the evidence shows that the disability is due solely to a pre-existing disease and where the disability would have arisen regardless of the injury. (*Perry County Coal Corp.* v. *Industrial Com.* 294 Ill. 117; *Spring Valley Coal Co.* v. *Industrial Com.* 289 id. 315.) There is no evidence in the record which corroborates the claim of defendant in error that he received an injury to the back of his head or that he was rendered unconscious by the fall of coal. His own story of the injury is contradictory and un-

reasonable. We do not need the opinion of a medical expert to advise us that defendant in error would not have been able to report his injury immediately after the accident and would not have been able to return to work within nine days if a chunk of coal weighing 600 pounds had struck him on the back of his head, made a gash seven inches long and fractured his skull. If we grant that defendant in error received the injury which he claims he received, we must hold that the finding that the blindness was caused by the injury is against the manifest weight of the evidence. Both Dr. Charles and Dr. Frey examined defendant in error shortly after his eyes began to fail, and their testimony was available to him if he had seen fit to produce them. Plaintiff in error requested that they give the Industrial Commission the benefit of their investigation, but they refused to testify without the consent of defendant in error, on the ground that the services they had rendered were private and the information they obtained was privileged. The facts that defendant in error returned to work nine days after the injury and worked steadily as long as the mine worked, that the defect in his sight did not appear for several weeks after the injury, and that there is no evidence connecting the disability with the injury, are not consistent with the decision of the Industrial Commission. The award must be set aside.

The judgment is reversed and the cause is remanded to the circuit court of Montgomery county, with directions to set aside the award of the Industrial Commission and to remand the cause to the Industrial Commission for a further hearing on the evidence now in the record and such further evidence as either party desires to submit.

*Reversed and remanded, with directions.*