(No. 15314.—Judgment affirmed.)

THE INLAND RUBBER COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EARL HUMMEL, Plaintiff in Error.)

*Opinion filed June 20, 1923.*

1. WORKMEN'S COMPENSATION—*whether claim for compensation is made is question of fact.* Whether a claim for compensation has been made within the time required by section 24 of the Compensation act is a question of fact, to be determined like any other similar question.

2. SAME—*decision of Industrial Commission must be according to preponderance of evidence.* It is the duty of the Industrial Commission in the first instance to hear and weigh the evidence and to make its finding for that party in whose favor the evidence preponderates, and the commission is not justified in finding for one party because there is some evidence in the record which, if it stood undisputed, would justify such finding, where the evidence is conflicting and preponderates in favor of the other party.

3. SAME—*authority of circuit court in reviewing a compensation case.* Where a compensation case is brought before the circuit court for review that court exercises its own independent judgment as to both law and facts, according to the settled rules governing judicial action and decision.

4. SAME—*same rules of evidence prevail as at common law.* In proceedings under the Compensation act the rules respecting the admission of evidence and the burden of proof are the same as prevail in common law actions for personal injuries, the procedure, only, being different.

5. SAME—*right to compensation must be established by a preponderance of competent evidence.* The claimant must prove, by a preponderance of competent evidence, all the facts necessary to justify an award, as liability under the Compensation act cannot rest upon imagination, speculation or conjecture but must be based upon facts established by a preponderance of the evidence.

6. SAME—*what weight should be given finding of the Industrial Commission.* Where the facts are controverted and the determination of a disputed question depends upon credit to be given contradictory testimony the courts will give due weight to the finding of the Industrial Commission; but it is the duty of the courts to weigh and consider the evidence in the record, and if it is found that the decision of the commission is without substantial foundation it must be set aside.

7. SAME—*making of claim for compensation under section 24 of the act is jurisdictional.* The making of a claim for compensation, as required by section 24 of the Compensation act, is jurisdictional and a condition precedent to the right to maintain an action under the act, and where the claimant has failed to make a claim within the statutory period the Industrial Commission has no jurisdiction to proceed with the hearing.

8. SAME—*when employee is not entitled to eighteen months in which to make claim for compensation.* The provision of the statute which allows an employee to make a claim for compensation within eighteen months after his "return" to work does not apply where the employee is not temporarily totally incapacitated at the time of his injury but continues to work for some months afterward, with the exception of a few days, until his final discharge from employment.

9. SAME—*period of temporary total incapacity cannot be fixed before disability ends.* The Industrial Commission has no right to forecast the length of the period of temporary total incapacity, as temporary disability is a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit, and the length of the period of the temporary disability can be determined only when that period ends.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. LEE W. CARRIER, Judge, presiding.

GEORGE B. COHEN, for plaintiff in error.

FYFFE & CLARKE, (PHILIP C. KLOHR, of counsel,) for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Earl R. Hummel, while in the employ of the Inland Rubber Company as a finisher of automobile tires, claims to have received an injury which finally totally incapacitated him for work. He was employed by the company in January, 1919, and continued in the employment until he was discharged, in November, 1920. He earned about $50 a week. He testified that he was in good health when he entered the company's employment; that he had a slight accident in April, 1919; that he did not consider it serious and did not claim compensation at that time; that thereafter he occasionally suffered pains in his hips similar to those caused by rheumatism; that about the first of July, 1920, he was pushing a jack, which rolled on four casters, and which carried a tire in which there was an iron core; that one of the casters stuck and the jack tilted; that in an effort to keep it from falling he slipped and fell and the jack fell on him; that his buddy, Earl Buck, helped him right the jack and place the tire back on it; that thereafter he suffered considerable pain in his hips; that he did not think his injuries serious and continued work; that two or three days after the injury he told Lawrence Sexton, assistant superintendent, about the accident; that Sexton told him that the soreness would soon leave; that the pains increased and he told Sexton that he wanted to be examined by the company physician; that with Sexton's consent he went to Dr. Sumner L. Koch for an examination; that Dr. Koch examined him thoroughly but said he could not determine the extent of his injury without an X-ray picture; that no picture was taken at that time; that during the four and one-half months he continued in the employ of the company after the accident he lost six or seven days because his hips pained him so much that he could not work; that he does not remember the dates when he did not work; that from time to time he told Sexton that his hips still

gave him trouble; that he was discharged about the middle of November; that he rested for about two weeks and then took employment with an Atlantic and Pacific Tea Company store; that he worked there four or five weeks; that he consulted his family physician, Dr. Mandel Cohen, about the first of October, 1920, and was still taking treatment from him at the time of the hearing; that in January, 1921, X-ray pictures were taken and he was thereafter placed in a cast and kept in bed until July; that he is now totally disabled; that he filed a claim for compensation with the Industrial Commission on January 23, 1921, and that this was the first formal claim which he made.

Earl Buck testified that he was working with Hummel about July 1, 1920, when he was injured; that he did not see the jack fall but saw Hummel lying on the floor and went to help him; that he stood up and seemed to be suffering from pain in his hip; that a couple of days after the accident he heard Hummel tell Sexton that he had hurt his hip; that he heard him talk to Sexton about it several times; that prior to the injury Hummel was not lame but that subsequently thereto he limped considerably. Several other witnesses testified that Hummel was able-bodied and danced and skated before the accident but that he continued to become more and more lame after that time.

Lawrence E. Sexton testified that he knew Hummel; that he limped slightly when he began working for the company and that his limp became gradually worse until he was discharged; that several times Hummel told him he would have to lay off a few days because he was suffering from rheumatism; that no injury was reported to him and that Hummel never talked to him about an injury; that Hummel talked to him frequently about his rheumatism; that in October, 1920, Hummel told him his rheumatism was worse and he would have to have his tonsils removed; that he would be gone some days but wanted him to hold his place for him; that about six weeks later business became

slack and Hummel was discharged with several other men; that after he had been gone for some time witness met him and talked with him, and that Hummel told him his rheumatism had gotten the best of him and that his doctors said he would have to have his legs put in a cast; that he said nothing to him about an injury having occurred the previous July and made no demand for compensation. There were other witnesses who testified that Hummel walked with a limp prior to July 1, 1920, and that he often ascribed his disability to rheumatism.

Dr. Sumner L. Koch testified that he did not recall examining Hummel at the time indicated by him but that he would not say that he did not. Dr. Mandel Cohen testified that he examined Hummel first October 3, 1920, and that he kept him under observation and treatment until he put him to bed in January, 1921; that he had him examined with an X-ray machine January 10 by Dr. Frank Norton and January 11 by Dr. Max Reichman; that the pictures revealed a synovial effusion in the hip joints; that the condition indicates a traumatic tubercular coxitis; that the condition is such that he is of the opinion that the trauma causing it occurred not more than six months before the examination; that Hummel was placed in a cast which covered his body from above the hips to his toes on the left leg and below his knee on the right leg; that there are no tubercular lesions in other parts of Hummel's body; that Hummel is permanently disabled; that the hips will be stiff; that the healing process will take two or three years, and that after that the head of the bone will be united with the socket and there will be no flexion at the hip joint; that he will be able to walk after that and do some work. Dr. Reichman testified that the condition of the hip joints revealed by the X-ray indicated tuberculosis; that he considered that the condition had been there about five or six months; that he thought it could not be of longer duration, because if it had been the bone would be affected; that the

bone is not now affected; that the usual cause of the condition with which Hummel suffers is an injury; that the injury lowers the natural resistance of the part of the body affected and the tubercular bacilli gather there and cause the disease; that if anything else lowers the resistance the same condition may result without an injury.

There was a hearing before an arbitrator and he denied compensation. On review the Industrial Commission set aside the decision of the arbitrator and entered an award, in which it was found "that as the result of said accidental injury the applicant was temporarily totally incapacitated for work for a period of 288 6/13 weeks," and compensation aggregating $3750 was awarded. This award was set aside by the circuit court of Cook county. The cause is here for review on writ of error.

Section 24 of the Compensation act provides that no proceedings for compensation shall be maintained under the act unless claim for compensation is made within six months after the accident. Whether a claim for compensation has been made is a question of fact, to be determined like any other similar question. It is the duty of the Industrial Commission in the first instance to hear and weigh the evidence and to make its finding for that party in whose favor the evidence preponderates. The commission is not justified in finding for one party because there is some evidence in the record which, if it stood undisputed, would justify the finding, where the evidence is contradicted by credible evidence and it leaves the whole evidence preponderating in favor of the other party. (*Camp Spring Mill Co.* v. *Industrial Com.* 302 Ill. 136; *Hafer Washed Coal Co.* v. *Industrial Com.* 293 id. 425.) When the case is brought before the circuit court for review that court exercises its own independent judgment as to both law and facts according to the settled rules governing judicial action and decision. In proceedings under the Workmen's Compensation act the rules respecting the admission of evidence and the burden of proof

are the same as prevail in common law actions for personal injury. The procedure, only, is different. Before a claimant can recover compensation he must prove by a preponderance of competent evidence all the facts necessary to justify an award. Liability under said act cannot rest upon imagination, speculation or conjecture but must be based upon facts established by a preponderance of the evidence. (*Chicago Daily News Co. v. Industrial Com.* 306 Ill. 212.) Where the facts are controverted and the determination of a disputed question of fact depends upon credit to be given contradictory testimony the courts will give due weight to the finding of the commission, which is qualified by experience and special study to weigh facts applicable to cases within its jurisdiction. (*Keller v. Industrial Com.* 302 Ill. 610.) It is the duty of the courts, however, to weigh and consider the evidence in the record, and if it is found that the decision of the commission is without substantial foundation in the evidence it must be set aside. In this case there is a total want of evidence that a claim for compensation was made within the six-months' period. Hummel testified that he talked frequently with those in authority about his disability, but he does not claim that he made a demand for compensation until he filed his petition with the Industrial Commission. This was seven months after it is alleged the accident occurred. The making of a claim for compensation is jurisdictional and a condition precedent to the right to maintain an action under the Compensation act. The claimant having failed to make a claim within the statutory period, the Industrial Commission was without jurisdiction to proceed with the hearing. *Ideal Fuel Co. v. Industrial Com.* 298 Ill. 463; *Central Car Works v. Industrial Com.* 290 id. 436; *Bushnell v. Industrial Board,* 276 id. 262; *Haiselden v. Industrial Board,* 275 id. 114.

Plaintiff in error contends that the fact that he laid off a day on five or six different occasions because of disability growing out of his injury places him under that proviso of

309—4

the statute which extends the time for filing the claim to eighteen months where the employee "returns" to the employment of the employer in whose service he was injured. This contention is clearly unsound. The dates of these occasional absences were not fixed by plaintiff in error. He was not temporarily totally incapacitated at the time of the injury and did not cease employment at that time, and then, after a partial recovery, return to his employment. He continued to work after he claims he was injured, and so far as this record shows it may have been two or three months after he claims he was injured that he remained at home for a day. There was clearly no "return" to employment as contemplated by the act. *American Glyco Metal Co.* v. *Industrial Com.* 306 Ill. 421; *Swift & Co.* v. *Industrial Com.* 299 id. 587.

While this award must be set aside for want of jurisdiction in the commission to make it, it ought to be pointed out that the commission has no right to forecast the length of the period of temporary total incapacity. (*Stromberg Motor Device Co.* v. *Industrial Com.* 305 Ill. 619; *Groveland Coal Mining Co.* v. *Industrial Com.* 308 id. 499.) By the award made in this case the commission has determined that the claimant is totally incapacitated for work, that his condition is temporary, and that this temporary condition will continue for 288 6/13 weeks and then suddenly cease. Temporary disability is a condition that exists until an injured workman is as far restored as the permanent character of the injuries will permit, and the length of the period of the temporary disability can only be determined when that period ends.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*