(No. 18915.—

THE CITY OF ROCHELLE, Plaintiff in Error, *vs.* THE INDUS-TRIAL COMMISSION *et al.*—(MARTIN JACOBSON, Defendant in Error.)

*Opinion filed October 25, 1928—Rehearing denied Dec. 11, 1928.*

GEORGE D. ANTHONY, and GOODNOW, ALLABEN & SNEWIND, (MAX F. ALLABEN, of counsel,) for plaintiff in error.

WIRICK & WIRICK, for defendant in error.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

Martin Jacobson filed with the Industrial Commission a claim for compensation for an accidental injury alleged to have been suffered while in the service of the city of Rochelle, in Ogle county. The arbitrator denied compensation. The Industrial Commission, on review, set aside the decision of the arbitrator and awarded Jacobson $398.25 for medical, surgical and hospital expenses, $13.50 per week for

25 weeks, the period of temporary total incapacity for work, and a like sum per week during 180 weeks for the complete loss of the left leg by amputation. On review by writ of *certiorari* the circuit court of Ogle county confirmed the decision of the Industrial Commission. This court, upon the city's petition, awarded a writ of error, and the record is here for a further review.

From the testimony of Martin Jacobson before the arbitrator it appears that he was sixty-three years of age; that on February 25, 1926, while employed by the city of Rochelle at its water and light plant, he used an iron bar to open a dump-car loaded with coal; that the door of the car suddenly gave way and the bar struck the great toe of his left foot; that some time later, while he was dressing the toe, he exhibited it to persons about the plant and told them of the accident; that he continued his work, except for two or three days, until June 10, 1926, and had not been employed since; that on June 20, 1926, he called on the city clerk for his pay check but did not speak to him then or at any other time concerning compensation, and that he had not demanded compensation from the city through any other employee. Jacobson further testified that his toe had been treated by various physicians since the latter part of March, 1926, and on the 31st day of October he went to a hospital, where early in November his left leg was amputated about six inches below the knee. No person saw the accident.

During the hearing before the arbitrator, which occurred on March 31, 1927, Jacobson was asked whether he had made any claim for compensation, and he answered, "No, I didn't, really." Upon further inquiry whether he had made any claim in September he replied in the affirmative, and a letter dated September 29, 1926, written by an attorney in his behalf and addressed to A. A. Unger, city clerk, Rochelle, Illinois, was by agreement admitted in evidence. This letter is as follows: "This is to notify you,

as city clerk of Rochelle, Illinois, that one Martin Jacobson, who has been a regular employee of said city at the water and light plant, sustained an injury to his toe of his left foot while in said plant and while performing the duties for which he was employed; that such injury was caused by reason of an iron bar falling upon his toe, and as a result of which blood poisoning developed. Said accident occurred on or about the 25th day of February, 1926, and he continued in the employ of said city, performing his duties as such employee, until on or about the 10th day of June, when he was compelled to cease his labor, and since the last mentioned date has been totally disabled from performing labor of any kind, requiring the services of a doctor since last mentioned date. He believes that he is entitled to compensation under the Illinois Workmen's Compensation act, and I will ask that you kindly call the matter to the attention of the proper authorities."

Jacobson testified before the Industrial Commission on review that by his answer before the arbitrator that he had not "really" made a claim for compensation he meant that he had not done so himself; that he had made no such claim against the city of Rochelle personally, but that he had told his son Oscar to inform Unger, the city clerk, that he had been hurt at the power plant and wanted to make a claim for compensation, and that his son called on the city clerk about the 10th day of July, 1926.

Oscar Jacobson, the son, twenty-eight years of age, over objection, testified that about July 10, 1926, he informed Unger, the city clerk, that his father had sent him to give notice of the accident at the power plant and to make claim for compensation to which the father understood he was entitled. On cross-examination the son admitted that his conversation with the city clerk occurred prior to the hearing before the arbitrator; that he was present at that hearing and that he knew that one of the disputed questions was whether his father had made demand for compensation, but

that he did not testify before the arbitrator. The city clerk, to whom the letter in behalf of Jacobson dated September 29, 1926, was addressed, died on May 17, 1927, which was subsequent to the arbitrator's hearing but prior to the commission's hearing on review.

Charles Lathrop, the superintendent of the power plant, was the only other witness called by Jacobson. He testified that neither Jacobson nor any person in his behalf had ever made a claim for compensation upon him; that his first information of the alleged accident was when the city clerk received the letter of September 29, 1926; that William H. Weber, chief engineer at the power plant, once told the witness that Jacobson thought he had frozen his foot, and that the witness advised Weber to send Jacobson to a physician.

Six witnesses appeared in behalf of the plaintiff in error. Thomas F. Clinton, an investigator for an insurance company, testified that during the winter of 1927 he talked with Unger, the city clerk, concerning the alleged accident suffered by Jacobson and inquired whether notice had been given or compensation therefor had been demanded. An offer was made to show by the witness that Unger, in the presence of W. W. Wheeler, stated that he had never heard of the accident nor had any demand for compensation ever been made upon him prior to the letter of September 29, 1926. An offer was also made to prove the same facts by Wheeler. Objections to both of these offers were sustained. William H. Weber, the chief engineer, and William Trothing, a fireman at the power plant, both testified that in April, 1926, Jacobson told them that he thought his foot had been frozen, but neither had any recollection that Jacobson ever stated that his foot had been injured by an iron bar falling upon it. Hattie Luce, Jacobson's next door neighbor, testified that in the spring of 1926 she often saw him at work in the garden; that one day she inquired about his foot's ailment, and he answered that he thought it had

been frozen. She added that she had never heard of an injury to his foot by the falling of an iron bar. John Allen testified that in February, 1926, he worked at the power plant for the Northberg Engine Company but that he was not an employee of the city; that Jacobson told him late in the same month that while unloading a car the door came open, an iron bar slipped from his hand and crushed his toe. The witness saw the toe and it was turning purple.

It was agreed that the relation of employer and employee existed; that both parties were governed by the provisions of the Workmen's Compensation act; that the employee had no children under the age of sixteen years and that he earned $27 per week. The city, however, denied that Jacobson had suffered an accidental injury which arose out of and in the course of his employment, or that he had given notice within thirty days or had made claim for compensation within six months after the alleged accident.

The contentions made by the plaintiff in error for a reversal of the circuit court's judgment and the setting aside of the Industrial Commission's award of compensation are: (1) That no written statements were filed in the offices of the city attorney and city clerk within six months after the alleged injury, as required by section 2 of the act entitled, "An act concerning suits at law for personal injuries and against cities, villages and towns," approved May 13, in force July 1, 1905; (Cahill's Stat. 1925, p. 1359; Smith's Stat. 1925, p. 1458;) (2) that the testimony of Jacobson's son and agent with reference to what he told the city clerk was incompetent because the clerk was dead when the testimony was given; (3) that the testimony of Jacobson and his son concerning the demand made July 10, 1926, given before the Industrial Commission on review, is unworthy of credence and should be disregarded; and (4) that there is no evidence to sustain (a) the finding that the alleged accident to the toe in February caused the amputation of the leg in November, or (b) the award for medical, surgi-

cal and hospital expenses. In our view it will be necessary to consider only the third contention.

Section 24 of the Compensation act (Cahill's Stat. 1925, p. 1190; Smith's Stat. 1925, p. 1292;) provides that no proceedings for compensation under the act shall be maintained unless claim for compensation has been made within six months after the accident. The making of a claim for compensation is jurisdictional and a condition precedent to the right to maintain a proceeding under the Compensation act. (*Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43; *Ideal Fuel Co.* v. *Industrial Com.* 298 id. 463; *Central Car Works* v. *Industrial Com.* 290 id. 436; *Bushnell* v. *Industrial Board,* 276 id. 262.) Whether a claim for compensation has been made is a question of fact, to be determined like any other similar question. (*Inland Rubber Co.* v. *Industrial Com. supra.*) Jacobson testified before the arbitrator that he made no demand for compensation prior to the letter of September 29, 1926, which was written more than six months after his toe was injured. On review, notwithstanding his testimony before the arbitrator, he testified that he sent his son Oscar to the city clerk about the 10th day of July, 1926, to make claim for compensation. The son was present at the arbitrator's hearing, which occurred on March 31, 1927, but he did not testify. Unger, the city clerk, was also present at that hearing, but he was dead when the commission heard additional testimony. The son admitted, on review, that he knew that one of the disputed questions before the arbitrator was whether his father had demanded compensation from the city. If he had made demand on or about the 10th of July, 1926, as he testified on review after the city clerk's death, he would naturally have testified to the same fact before the arbitrator when the necessity for proof of this jurisdictional requirement was apparent to him. He did not testify that compensation had been claimed when the person upon whom the alleged demand was made was present and could contradict him.

He sought to establish that fact by his testimony on review, when, by reason of the city clerk's death, contradiction was impossible. Jacobson was represented by counsel at the arbitrator's hearing, and if the claim for compensation had actually been made by the son on behalf of the father in July, 1926, eight months before that hearing, the attorney obviously would have called the son as a witness. Moreover, if compensation had been demanded in July, the necessity for a further demand by the letter of September 29, 1926, after the period prescribed by the act for making such a demand had expired, is not disclosed. That letter makes no reference to a prior demand for compensation, and in that respect accords with the testimony of Jacobson before the arbitrator that no demand had been made prior to the date of the letter. Granting that the son's testimony concerning the making of the demand was competent, it was, under the circumstances, of no probative force.

Liability under the Compensation act cannot rest upon imagination, speculation or conjecture. It must be based upon facts established by a preponderance of the evidence. (*Chicago Daily News Co.* v. *Industrial Com.* 306 Ill. 212; *Inland Rubber Co.* v. *Industrial Com. supra; Atlas Brewing Co.* v. *Industrial Com.* 314 Ill. 196.) It is the duty of the courts to weigh and consider the evidence in the record, and if it is found that the decision of the Industrial Commission is without substantial foundation in the evidence the decision must be set aside. (*Inland Rubber Co.* v. *Industrial Com. supra.*) In the instant case there is no evidence worthy of credence that a claim for compensation was made within the period prescribed by the act. The Industrial Commission was therefore without jurisdiction to proceed with the hearing or to make an award of compensation.

The judgment of the circuit court is reversed and the award of the commission is set aside.

*Judgment reversed and award set aside.*