(No. 19608.—

THE SUPERIOR COAL COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ANTHONY BARR *et al.* Plaintiffs in Error.)

*Opinion filed October 19, 1929—Rehearing denied Dec. 5, 1929.*

A. C. LEWIS, and JOSEPH A. LONDRIGAN, for plaintiffs in error.

VAUGHN & NEVINS, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

William Barr was a coal miner employed by the Superior Coal Company in its mine at Gillespie, Illinois. While engaged in the mine in the early afternoon of December 8, 1926, he was injured by a piece of slate, weighing about 100 pounds, falling from the roof and striking his right leg and ankle. After his injury he rested a few minutes and then tried to resume his work but was unable to do so. He rode out to the first-aid station at the bottom of the shaft on the road motor, received first aid and was removed from the mine. The first-aid man advised Barr that if his leg did not improve he should report to the company's doc-

tor. Barr was taken home by the mine examiner and remained there, in bed most of the time, for a few days, unable to walk except with the aid of a cane. He reported at the office of the mine superintendent about his condition on the morning of December 13. He also consulted Dr. Sullivan, the company's physician, on the same morning. Dr. Sullivan found his right leg discolored and blue and a slight swelling in the calf of the leg. The skin was not broken. Dr. Sullivan administered treatments of liniments. Barr was found about two o'clock P. M., December 13, on the sidewalk in the city of Gillespie, was removed into a near by house and Dr. Higgins called. Barr was in a very serious condition when Dr. Higgins saw him and died within five minutes thereafter.

An application for adjustment of claim under the Workmen's Compensation act was filed in February, 1927. The cause was heard before an arbitrator, who found that deceased sustained accidental injuries arising out of and in the course of his employment on December 8, 1926, and that such injuries caused his death on December 13, 1926; that the deceased left surviving his widow and a minor son aged seven, both of whom he was under legal obligation to support. An award was made of $15 per week for a period of 273⅓ weeks under paragraph (a) of section 7 of the act, and the child's share of $7.50 per week was ordered to be paid to his guardians for his education and support. The cause was reviewed by the Industrial Commission, where the award was approved and confirmed. The coal company caused the case to be taken to the circuit court of Macoupin county by *certiorari* proceedings, where the decision of the Industrial Commission was reversed. The petitioners by leave of court have brought the case here for review by writ of error.

The only question in dispute and to which the briefs and arguments are directed is whether the employee's death resulted from his injury of December 8.

Dr. Higgins' is the only medical testimony of any physician who saw Barr just prior to his death. He testified the discoloration of the skin of the leg was caused by a slight rupture of the smaller blood vessels, and in his opinion the death was caused by an embolism which resulted from the bruising of the veins in the leg, probably clotting some of the blood and the clot getting into the blood stream. The testimony showed that Barr was addicted to the use of intoxicating liquors, but Dr. Higgins testified it was not as probable that his death was caused by alcoholism as by embolism. He said Barr could hardly have died of alcoholism; that an embolism might be caused if a vein was bruised, setting up an irritation of the lining, causing a blood clot, and movements would loosen it, causing it to get into the circulation. In the doctor's opinion the death was caused by "something coming from this leg." He testified the embolus got into the circulation and went to some vital spot, probably the heart or brain; that the most probable cause of Barr's death was the injury he received December 8.

Dr. Sullivan, Dr. Deal, Dr. Woodruff and Dr. Staben testified as experts for defendant in error. Dr. Sullivan testified that without seeing the patient he would not care to express an opinion as to the cause of his death; that the doctor who saw him was in a better position to express an opinion than the witness. The witness has had no experience with embolisms. Dr. Deal testified, in answer to a hypothetical question, that in his opinion there was no relation between Barr's injury and his death. He testified methyl alcohol is a common cause of death, and that sudden death from myocarditis, endocarditis, thrombosis of the coronary artery, general arteriosclerosis, cerebral hemorrhage, diabetes and uremia meningitis were rapidly increasing. He testified he would not want to sign a certificate as to the cause of Barr's death from the mere facts stated in the hypothetical question; that it was possible to

have an injury sufficient to injure the blood vessels and result in an embolism. Dr. Woodruff testified that from the facts stated in the hypothetical question he answered he did not believe there was any connection between the injury and the death. He said there were three causes of embolism: infection, chronic degenerative change in the blood vessel wall, and trauma or injury. He said the injury would have to be quite severe. He said if he had been able to examine Barr's leg, the pupils of his eyes and general symptoms before he died he would be in a much better position to give an opinion as to whether the death was caused by embolism. Dr. Staben testified that in his opinion there was no connection between the injury and the death, but that to say what the cause of the death was would be entirely guesswork. He further testified he had been associated with Dr. Deal for about ten years, and that if an injury is sufficient to cause a clot within a blood vessel it may result in an embolism; that from the description given of Barr's injury one could not tell whether it was extensive enough to cause a clot in the blood; that a physician who saw Barr before his death would be in a better position than the witness to answer that question.

No other question is raised in the case than the sufficiency of the evidence to sustain the award. There is no question of plaintiff in error and defendant in error being under the Compensation act and that Barr received an injury in the course of and growing out of his employment. Defendant in error's contention is that the injury received by Barr was not the cause of his death. The company's medical testimony, with the exception of Dr. Sullivan's, was by doctors who had never seen Barr after his injury, and while they expressed the opinion that an injury of the character received by Barr, if severe enough, would cause embolism, they were of the opinion that the death did not result from the injury. Barr had been in good health prior

to his accident. This court has held that due weight should be given by it to the finding of the Industrial Commission where there is a conflict of evidence. *Keller* v. *Industrial Com.* 302 Ill. 610; *Consolidated Coal Co.* v. *Industrial Com.* 311 id. 61; *Field & Co.* v. *Industrial Com.* 305 id. 134; *Mehay* v. *Industrial Com.* 316 id. 97.

While the medical witnesses for defendant in error expressed their opinion that the death did not result from the injury to Barr, their testimony discloses that death could result from such an injury as Barr received if it was severe enough. Dr. Higgins, who saw Barr immediately before his death, testified it was caused by an embolism and the embolism was caused by Barr's injury, which set up an irritation causing a blood clot, which became loosened and got into the circulation. He defined an embolism as a foreign body floating in the blood stream. No witness denied that Barr might have died from an embolism. Some of defendant in error's witnesses testified he might have died from other causes, but said if the injury to his leg was severe enough it might cause an embolism.

We have quoted the substance of the testimony on both sides, and while there were more witnesses testified for defendant in error than for plaintiff in error as to the cause of the death, the testimony was of such character that we believe the Industrial Commission was warranted by the evidence in making the award and that the court erred in reversing and setting it aside.

The judgment of the circuit court will be reversed and the order of the Industrial Commission confirmed.

*Reversed and order of commission confirmed.*