(No. 2171—

HERMAN J. ARNOLD, ADMINISTRATOR OF THE ESTATE OF AMBROSE SULLIVAN, Deceased, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 13, 1935.*

DOWNING & HELFRICH, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For about eight days prior to the 16th day of June, A. D. 1932, Ambrose Sullivan had been employed by respondent in mowing weeds on S. B. I. Routes Nine (9), Three (3) and Ninety-five (95) in McDonough County, under the supervi-

sion of Jesse Walters, Highway Maintenance Superintendent. Sullivan lived about two miles north of Macomb, and was the owner of a team of horses and a mower which he used in his said work. For the first few days of his employment he worked near his home, and drove his team home at the end of the day's work. After the first few days, he was at some considerable distance from his home at quitting time, and on those days he left his team and mower with some farmer who lived near the place where he stopped work, and rode home with Mr. Jesse Walters, the Maintenance Superintendent, and the next morning he would come out with his Maintenance Superintendent to the place where he left his team the night before. The matter or custom of riding back and forth with the Maintenance Superintendent was not a part of the contract, but was a sort of mutual arrangement or understanding between them. The same custom existed with other men who were also employed in mowing weeds. The mowers ordinarily worked nine hours a day, usually commencing at seven o'clock a. m., and quitting at five o'clock p. m. Sometimes they started a little before seven or a little after seven, but they aimed to start work at seven o'clock. Their time commenced when they got on the job. On a wet morning their time commenced when the weeds were dry enough to mow.

On June 15, 1932, Sullivan was about seven miles from his home when he quit work. He left his team and mower with a farmer living about forty rods north of S. B. I. Route 95, and rode home with his Maintenance Superintendent.

The next morning the Maintenance Superintendent in driving out to work met Sullivan about one-half mile from his (Sullivan's) house, and stopped to pick him up. The Maintenance Superintendent was driving a small pick-up truck with a single seat, and there were two men riding in the seat with the driver. Sullivan rode in the back of the truck, which went north on Route 3 to the Junction and then east on Route 95, to a point about seven miles from Macomb where the Maintenance Superintendent stopped the truck so that Sullivan could get out and get his team and mower. Sullivan got out and started across the road to the north. Just then Mr. Walters, the Maintenance Superintendent, called to him and he came back. In this connection Mr. Walters testified:

"It had come a rain the day before and we were in doubts whether it was going to dry enough to go on mowing. After he got out I spoke to him, and I said, 'Mr. Sullivan, you can use your own judgment about when to start.' "

Homer B. Carey, the only other witness who testified as to this conversation, said:

"Mr. Sullivan got out and started across the road and Jess hollered at him and called him back and told him that it was too wet, we wouldn't hitch up for about two hours until it got a little dryer."

After this conversation, Sullivan started back across the road again to the north. Just then one Keith Sapp who was also driving east on said Route 95, approached the State truck, and turned to the left to pass it just as Sullivan was crossing the road the second time. Sapp turned further to the left to avoid an accident, but Sullivan evidently became confused, and ran into the side of Sapp's car, whereby he was thrown to the pavement, and sustained injuries from which he died while being taken to the hospital.

Sullivan left him surviving his wife and four children, two of whom were under sixteen years of age at the time.

Sullivan's earnings were eighty-five cents (85c) per hour for himself, team and mower, of which amount forty cents (40c) was regarded as his for his individual services and the balance for the team and mower. Claimant, as administrator of the estate of said decedent, seeks to recover compensation under the terms and provisions of the Workmen's Compensation Act.

The Attorney General contends that claimant is not entitled to recover for the following reasons:

1. No claim for compensation was made within six months after the accident, as required by Section 24 of the Workmen's Compensation Act.

2. The accident in question did not arise out of the employment of said decedent.

We have examined the evidence carefully and do not find any evidence whatsoever which bears in any way upon the question as to whether any claim for compensation was made.

The making of claim for compensation within six months after the accident, in accordance with the requirements of Section 24 of the Workmen's Compensation Act, is jurisdictional, and is a condition precedent to the right to main-

tain a proceeding under the Compensation Act. *City of Rochelle* vs. *Ind. Com.*, 332 Ill. 386; *Inland Rubber Co.* vs. *Ind. Comm.*, 309 Ill. 43; *Bushnell* vs. *Ind. Comm.*, 276 Ill. 262; *Haiselden* vs. *Ind. Board*, 275 Ill. 114.

The making of claim for compensation being a condition precedent to the right to recover, we have no jurisdiction to proceed further with the case. It therefore becomes unnecessary to consider the question as to whether the accident in question arose out of and in the course of decedent's employment.

For the reason above set forth, award must be denied. Under the rules the claimant has thirty days in which to file an amended complaint. Unless an amended complaint stating a cause of action against the respondent is filed within thirty days from the date of the entry of this order, final judgment will be entered dismissing the claim.