(No. 26060.—

THE NATIONAL MALLEABLE AND STEEL CASTINGS COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN TROJANOWSKI, Defendant in Error.)

*Opinion filed June 17, 1941—Rehearing denied September 10, 1941.*

POPE & BALLARD, (FERRIS E. HURD, LEWIS J. WEST, and PARKER L. JACOBSON, of counsel,) for plaintiff in error.

J. S. COOK, and THADDEUS C. TOUDOR, for defendant in error.

Mr. JUSTICE MURPHY delivered the opinion of the court:

John Trojanowski filed a claim with the Industrial Commission against National Malleable and Steel Castings Company claiming compensation under the Workmen's Occupational Diseases act, approved March 16, 1936, (Ill. Rev.

Stat. 1939, chap. 48, par. 172.1, *et seq.*) The nature and character of the illness or disease causing disablement was stated to be silicosis, tuberculosis, pneumoconiosis and other kindred occupational diseases which it was alleged arose out of and was caused by his employment as a coremaker. The arbitrator found Trojanowski had not sustained disablement for which compensation was payable, but the Industrial Commission, after hearing additional evidence on review, set aside the findings of the arbitrator and allowed compensation for total permanent disablement. This finding was confirmed by the superior court of Cook county and leave was granted to sue out a writ of error.

Plaintiff in error says that, broadly stated, there are but two questions presented, (a) does the evidence show Trojanowski was exposed to the hazard of an occupational disease any time after the effective date of the act (October 1, 1936) and July 12, 1938, the last day of employment, and (b) is the finding that Trojanowski sustained a disablement by reason of an occupational disease against the manifest weight of the evidence.

Trojanowski worked for plaintiff in error twenty-three years as a coremaker and his employment terminated July 12, 1938. The discharge from employment was for business reasons and not related to his physical condition. In the performance of his duties as coremaker he was required to handle and work with sand. Plaintiff in error's witnesses testified the sand was of coarse grain, that core oil and corn flour were mixed with it before handling. The mixing process was performed in the basement and the sand was moved to the coreroom by mechanical conveyors where it was dumped into bins according to classification. From these bins it was wheeled to smaller bins located near the coremakers. It ran through a chute from these latter bins to a shelf conveniently located and Trojanowski's duty as a coremaker was to pull the sand from the shelf into the corebox, firming it by tamping and leveling. When

filled, he placed a plate on the box and put it in a core-oven for baking. In the preparation of the box for the oven Trojanowski had his hands in the sand and he testified that his clothes, hands and face became covered with it, that he breathed dust particles and some entered his mouth. He also stated that dust from sand which had been used in the coreboxes and was being dumped as refuse came into the coreroom through an open window. There is some controversy as to this fact. His inability to speak and understand the English language makes it difficult to gather the substance of his testimony, but in view of the other evidence, it is apparent that when he was testifying to the sand dust coming through an open window, he was referring to a condition which existed prior to the changes made in handling the sand in 1936 and prior to the effective date of the act.

Witnesses called by plaintiff in error stated that Trojanowski's face, hands and clothes became grimy and dirty but that it was not an accumulation of sand dust. Their testimony is that the sand was of such coarse grain and being mixed with oil and other substances no dust arose from it. The coreroom was kept at an even temperature and ventilation was furnished by suction fans located in the ceiling. Seven months after Trojanowski ceased work plaintiff in error had a scientific test made to ascertain the particles contained in a cubic foot of air taken from a space near the bench where Trojanowski had worked. The expert who made the test stated that such cubic foot of air contained 1,875,000 particles, 0.12 of which were silicon dioxide. He also stated that to cause a disabling form of silicosis, the air must contain ten million or more particles of dust per cubic foot of air having a silicon dioxide content of thirty-five per cent, that the amount of silicon dioxide shown in the test was less than shown by a normal test of outdoor air of a city.

Plaintiff in error contends that the facts of the sand being graded to a standard size of not less than 1/200 mesh, that oil and other substances were mixed with it before using, and the method of handling, negative every possibility of the presence of sand dust in the coreroom. On cross-examination one of the witnesses admitted the handling and moving of the sand might crack the grains and create particles smaller than the standard size. If such was the fact, it is obvious that there could be particles pulverized to such an extent as to become dust. Sand contains silica and whether the sand with which Trojanowski worked was treated and handled in a way to avoid dust arising from it and exposing the workers to its hazard was a question of fact for the Industrial Commission, and its finding that he was exposed to such hazard can not, under the circumstances shown, be set aside as being against the manifest weight of the evidence.

The hearing before the arbitrator was held in 1939. Trojanowski testified that for four years prior he had headaches, sweats, chills, was weak at times, suffering pains in his chest, lost weight, had difficulty in breathing, and at times coughed *sputum* with blood in it. He said he was unable to perform manual labor, but however, subsequent to his discharge, he returned to plaintiff in error's factory on two or three occasions and asked for employment. After the filing of his claim with the commission, plaintiff in error sent word that he might return to work but he declined and assigned illness as the reason.

In March, 1939, Dr. M. Weissman made a written report of a physical examination he had made of Trojanowski. Dr. Weiner made a similar report of an examination made in September, 1938. On the hearing these written reports were produced by Trojanowski's attorneys and introduced in evidence under a stipulation that if the doctors were present they would testify as set forth in the respective re-

ports. In November, 1938, Dr. Mitchell, acting for plaintiff in error, made a physical examination of Trojanowski and read an X-ray film, and his report was introduced in evidence under the same stipulation.

On the hearing before the commission, Dr. Mitchell was called by plaintiff in error and testified in detail. Plaintiff in error also introduced the testimony of Dr. Potter, a roentgenologist, and Dr. McNally. Neither Dr. Weissman nor Dr. Weiner were called and Trojanowski did not introduce any medical testimony other than that contained in the reports of his two doctors.

In the report of Dr. Weissman, reference is made to the history of Trojanowski's employment and it is stated that an examination of his chest showed limited expansion, lagging in the upper anterior, reduced breathing intensity in the mid-scapularies and that the right upper anterior showed rhinco. He stated that an X-ray picture of the chest showed a moderately enlarged part with thickened hilum. At both hila numerous small nodules were imbedded in opaque matrix, particularly on the right side extending almost down to the base; that there was fibrosis in the lung fields, more marked in the right. He stated that in view of the occupational history, physical symptoms and X-ray findings, a diagnosis of silicosis could readily be made. He gave no opinion as to whether the conditions found would cause disablement.

Dr. Weiner's report recited the historical facts surrounding employment, certain subjective symptoms and stated an examination of the chest revealed dullness, especially on the right side, occasional rales at the bases near the hilum. He said the X-ray film of the lungs and heart revealed evidence of an advanced form of silicosis of the lungs and that it was his opinion the subject was suffering from silicosis which had reached a stage where he was permanently and totally disabled for manual labor.

Dr. Potter, a roentgenologist of wide experience, read two X-ray films taken November 27, 1939, and stated they showed general clearness in the outer lung field, no fibrosis on the apices of the costal phrenic area; that there was some thickening of the hila on either side which was slightly prominent; that there were nodules, the plainest were below the right hila and in the glands at the left; that such nodules did not show signs of activity and were not of an inflamed condition, and that there was no evidence of an active, pulmonary disease or of a significant pulmonary change. He said there were no silicotic nodules appearing in the lung field. The presence of the nodules near the hilum and the thickening of the hilum could be explained in that he had tuberculosis in childhood, which had healed. He read the same X-ray films referred to in the Weissman and Weiner reports and gave it as his opinion that they showed no silicotic nodules.

Dr. McNally, who had years of experience in this field, read the same X-ray films read by Dr. Potter. His version of what the pictures revealed was substantially the same. Dr. Mitchell made a physical examination November, 1938, and again on November, 1939. The examinations revealed nothing abnormal, and his reading of what appeared in the X-ray films was substantially the same as that testified to by Drs. Potter and McNally. The three medical experts called by plaintiff in error expressed the opinion that there was no evidence of disablement caused by silicosis or any other occupational disease. Dr. Mitchell stated he found evidence Trojanowski was suffering from thyroid condition which could not be classed as an occupational disease.

Since the evidence of Drs. Weissman and Weiner was limited to the conclusions and opinions expressed in their written reports, we can not know the facts they found and considered in arriving at such conclusions nor can it be determined what they observed from the reading of the

X-ray films. The evidence of Drs. Potter, McNally and Mitchell, developed on both direct and cross-examination, indicates that the presence of silicosis in the lungs in certain stages is reflected in X-ray films and such markings are known to the medical profession as nodules. Nodules also follow tuberculosis and a healed tubercular condition produces a calcified appearance as distinguished from an active and inflamed condition produced by a silicotic nodule. Another characteristic difference is location, the silicotic nodules being widely distributed and appearing from the hilum down through the mid-lung fields to the outer edges, while the calcified nodules which follow a healed tubercular condition appear nearer the hilum.

It has been observed that in cases of this character the medical experts do not agree as to what should be considered in making a diagnosis. Some draw their conclusions from a reading of the X-ray films alone, while others include occupational history and other facts with the X-ray findings. It is competent to have experts read the X-ray films. However, in this connection it should be noted that in so far as the introduction of such matters is related to the rules of evidence, the opinion of a medical expert who has not treated the employee but has examined him for the purpose of testifying as to the cause of his physical condition, is not admissible where it is based wholly upon the physician's observations of outward manifestations within the employee's control, or where it rests partly upon the physician's own observation and partly upon the statement of the case made by the employee. *Sanitary District* v. *Industrial Com.* 343 Ill. 236; *Lehigh Stone Co.* v. *Industrial Com.* 315 id. 431; *Wells Bros. Co.* v. *Industrial Com.* 306 id. 191.

In determining whether or not a complainant has silicosis causing disablement, the Industrial Commission should consider the occupational history of the patient, his physical condition, the X-ray readings, the opinions of the medical

expert and the other competent evidence which tends to prove or disprove a disablement caused by silicosis. Applying such rule to the facts here, the occupation in which Trojanowski labored and his physical condition as outlined in his evidence, are, if believed to be true, corroborative of the conclusions expressed by Drs. Weissman and Weiner.

Expert medical evidence is legal and competent evidence and should be received, treated and weighed precisely as other evidence. The character of the expert, his professional capacity, skill and opportunity for observation are all proper factors to be considered in determining the weight to be given his testimony. *Peabody Coal Co.* v. *Industrial Com.* 289 Ill. 449; *Madison County Mining Co.* v. *Industrial Com.* 306 id. 591.

This court has many times held that it will not reverse the decision of the Industrial Commission on a finding of fact unless its decision is against the manifest weight of the evidence. (*Keller* v. *Industrial Com.* 302 Ill. 610; *Swift & Co.* v. *Industrial Com.* 350 id. 413; *Macon County Coal Co.* v. *Industrial Com.* 374 id. 219.) Where the facts are controverted, and the determination of a disputed question of fact depends upon credit to be given contradictory testimony, the court will give due weight to the finding of the commission, which is qualified by experience and special study to weigh the facts applicable to the cases within its jurisdiction. (*Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43; *Consolidated Coal Co.* v. *Industrial Com.* 311 id. 61.) The finding of the commission in this case is not contrary to the manifest weight of the evidence, and the judgment of the circuit court was correct in sustaining it.

The judgment of the superior court of Cook county is affirmed. *Judgment affirmed.*