(No. 30278

National Malleable and Steel Castings Company, Defendant in Error, *vs.* The Industrial Commission *et al.*—(John J. Donahue, Plaintiff in Error.)

*Opinion filed January 22, 1948.*

E. Anne Mazur, and Jack L. Sachs, both of Chicago, for plaintiff in error.

Pope & Ballard, (Lewis J. West, of counsel,) both of Chicago, for defendant in error.

Mr. Justice Thompson delivered the opinion of the court:

John J. Donahue, plaintiff in error, has filed this petition for writ of error to review the decision of the superior court of Cook County on a claim for injuries arising out of and in the course of his employment with the National Malleable and Steel Castings Company.

The questions involved are purely questions of fact. The evidence was heard by the arbitrator who found that the claimant was not entitled to compensation. Upon review the Industrial Commission set aside the decision of the arbitrator, and directed that certain payments be made. On writ of *certiorari* in the superior court of Cook County, the finding of the Industrial Commission was reversed and from this order claimant perfects this writ of error.

Donahue was afflicted with industrial blindness and the only question involved in this case is whether it arose out of and in the course of his employment. He contends his blindness was due to an atrophy of the optic nerve which resulted from a trauma caused by a blow against his forehead between his eyes. This was caused by his coming in contact with a metal hoist. The employer claims that Donahue had a history of syphillis and that that disease caused a luetic atrophy of the optic nerve resulting in loss of vision.

Donahue was employed by defendant in error from December 1, 1941, to September 30, 1945, as a laborer. When he went to work he was given a physical examination by the employer, including an eye examination consisting of reading a chart, and the like. His vision was recorded as 20/40 in both eyes. He testified that on August 29, 1945, while he was following his usual employment, he was struck above the nose on the forehead by a swinging steel hydraulic hoist. The wound left a gash one-half to three-quarters of an inch in length. He testified that when he was struck he staggered back, started to bleed, saw stars and felt dizzy and nauseated; that later he went to the washroom where he vomited. Thereafter he went to the first-aid room where he complained of the injury and had the gash on his forehead dressed, after which he completed his day's work and went home. He testified that when he went home there was a lump on his forehead the size of a walnut; that he was dizzy and went directly to

bed. About four days later he went again to the first-aid room because, as he says, he couldn't see as he had before; that his eyes were bothering him. He testified that his vision became noticeably worse by September 15 and on September 30 he was forced to quit work because he could not see to get around. He complained of dizziness, nausea and headaches. He testified that he could not read ordinary newsprint. Later he went to an eye specialist who referred him to his family doctor because he thought there might be something else wrong; that later he was given shots in the hip, which treatment continued for some months. In the latter part of October, 1945, he was sent to an eye clinic where he was told that he had syphillis and that his condition was systemic. The record gives the history of examinations by various physicians and eye specialists, as well as the company nurse, all of whom testified. The nurse who dressed his head on the day he received the wound, described it as superficial and minor, and stated that the next day there was no noticeable swelling.

Along about September 26, 1945, plaintiff·in error complained of poor vision. The testimony indicates that at that time he had about a 20/200 vision in each eye and was unable to read newsprint. Donahue told the woman in charge of the clinic that the condition had been coming on gradually for some time; that for some time he had been unable to read. The party in charge of this eye clinic referred Donahue to an eye specialist of his own choosing. Different eye specialists were called to testify. Their testimony differed somewhat but all agreed that Donahue had become blind. One doctor testified that primary optical atrophy is an atrophy of the optic nerve and that it can result from trauma; that a blow on the forehead, if severe enough to cause a severe concussion, can cause an injury to the optic nerve or a spasm to the blood vessels which supply that nerve, bringing about an atrophy due to anemia or lack of blood supply; that this may be caused by a leutic infec-

tion and that syphillis can cause such an infection. One of the doctors testified that he considered, from examination, that the atrophy found in the nerve was due to trauma.

Another doctor found present the Argyle-Robertson syndrome, which he testified was the evidence of luetic central nervous system infection. This doctor testified that the core of the optic nerve did not contain any fibrous tissue which is alone indicative of a luetic infection, and that he was of the opinion that the condition of atrophy of the nerve had existed for some six months or more.

After the hearing of all this testimony the commission found for the claimant. The superior court of Cook County, after an examination of the record, held that the findings of the commission were against the manifest weight of the evidence.

Donahue's dizziness and headaches were described by both doctors and a slightly different causation ascribed to the conditions found. The accident and the aftereffect were described only by the applicant and his version of the accident must be taken as the record in this case. The doctors were eminent in the field of ophthalmology. One found luetic infection while the other did not. The difference in their conclusions as to the cause of the primary optic atrophy seems to have resulted from the difference in the weight given by these doctors to the history of the claimant.

In the state of the evidence which we find here, it can scarcely be said that the Industrial Commission, in finding for the claimant, entered a finding manifestly against the weight of the evidence. In the case of *Turner* v. *Industrial Com.* 393 Ill. 528, the question arose whether claimant had contracted tuberculosis or silicosis. X-ray pictures presented by the claimant showed, according to the testimony of his doctors, an advanced stage of silicosis. This was, however, denied by the employer's doctors. In that case this court said: "The rule is firmly established that it is the province of the Industrial Commission to draw reason-

able conclusions and inferences from evidentiary facts in workmen's compensation proceedings, and the courts are not privileged to set aside factual findings of the commission unless they are manifestly against the weight of the evidence. In short, a decision of the Industrial Commission should be set aside only where it is without substantial foundation in, or is manifestly against the weight of, the evidence. (*Lawrence* v. *Industrial Com.* 391 Ill. 80; *J. I. Case Co.* v. *Industrial Com.* 378 Ill. 132; *Hansell-Elcock Co.* v. *Industrial Com.* 376 Ill. 151; *Olympic Commissary Co.* v. *Industrial Com.* 371 Ill. 164.)"

Where the decisive evidence consists of highly conflicting views of medical experts, this court will not undertake to decide which of the two groups is more worthy of belief. The determination of the preponderance of the evidence is pre-eminently a function for the Industrial Commission. (*Buda Co.* v. *Industrial Com.* 377 Ill. 215.) Where the evidence is conflicting and the commission's finding is not contrary to the manifest weight of the evidence, its decision will not be disturbed. (*National Malleable and Steel Castings Co.* v. *Industrial Com.* 377 Ill. 169.) Where the commission has considered controverted facts and has had an opportunity to weigh the testimony of expert witnesses in the light of the history of the employment and the surrounding circumstances, and has arrived at a conclusion, it is the duty of this court to give due weight to the findings of the commission. *National Malleable and Steel Castings Co.* v. *Industrial Com.* 377 Ill. 169; *Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43; *Keller* v. *Industrial Com.* 302 Ill. 610.

The finding of the commission in this case is not contrary to the manifest weight of the evidence and the superior court of Cook County was in error in holding otherwise. The judgment of the superior court of Cook County is reversed and the finding of the commission is confirmed.

*Judgment reversed; award confirmed.*